# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Grand Traverse Band of Ottawa
and Chippewa Indians and its
Employee Welfare Plan,

                                      Plaintiffs,

v.

Blue Cross Blue Shield of
Michigan,

    Defendant/Third-Party Plaintiff,

v.

Munson Medical Center,

          Third-Party Defendant.

_____/

Case No. 14-cv-11349

Judith E. Levy
United States District Judge

Mag. Judge Mona K. Majzoub

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [94]

This ERISA case has been pending for over three years, and is currently before the Court on defendant Blue Cross Blue Shield of Michigan's motion to dismiss the amended complaint filed by plaintiffs Grand Traverse Band of Ottawa and Chippewa Indians and its Employee Welfare Plan.  (Dkt. 94.)

For the reasons set forth below, the motion is granted.

## I.    Background

Plaintiffs are a federally-recognized tribe and have filed suit against Blue Cross Blue Shield of Michigan ("BCBSM") for breach of fiduciary duty under ERISA and have also brought five state-law claims allegedly relating to a contract between the tribe, BCBSM, and Munson Medical Center.

Plaintiffs' initial complaint was partially dismissed without prejudice to amend and clarify which actions of defendant are the subject of ERISA claims and which are the subject of state-law claims. (*See* Dkts. 73, 76.)[1]

### *ERISA Agreement Between Plaintiffs and BCBSM*

Plaintiffs maintain a self-funded employee welfare plan ("Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Dkt. 90 at 1.)  The Plan covers three groups of participants:

---

[1] Plaintiffs appear to seek leave to amend the complaint in the response brief to defendant's motion to dismiss. (Dkt. 96 at 21 n.7.)  The Sixth Circuit has held that a party may not request "leave to amend in a single sentence without providing grounds or a proposed amended complaint" in a response brief. *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006).  Accordingly, plaintiff's request for leave to amend is denied.

1.  Members of the Tribe who are employed by the Tribe (Group #01019);

2.  Members of the Tribe who are not employed by the Tribe (Group #01020); and

3.  Employees of the Tribe who are not members of the Tribe (Group #48571).

In 2000, plaintiffs hired BCBSM to "provide administrative services for the processing and payment of claims" under the plan. (Dkt. 90-2 at 3.)

In 2007, new federal regulations implementing section 506 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 went into effect (hereinafter "MLR regulations"). These regulations stated that "[a]ll Medicare-participating hospitals . . .must accept no more than the rates of payment under the methodology described in this section as payment in full for all terms and services authorized by IHS, Tribal, and urban Indian organization entities." 42 C.F.R. § 136.30(a); *see also id.* § 136.32. And "if an amount has been negotiated with the hospital or its agent," the tribe "will pay the lesser of" the amount

3

determined by the methodology or the negotiated amount. *Id*. § 136.30(f). None of the parties disputes that these regulations apply to plaintiffs.

Plaintiffs allege that defendant was "well aware of the MLR regulations" and "systematically failed to take advantage of MLR discounts available to Plaintiffs." (Dkt. 90 at 3.) And "[a]s administrator of an ERISA plan, BCBSM owed a number of fiduciary duties" to plaintiff that were breached due to this failure to take advantage of the MLR discounts. (*Id*. at 2, 4–5, 18.) Plaintiffs seek restitution, statutory attorney fees, and other damages, costs, and interest permitted by law. (*Id*. at 23.)

### *Facility Claims Processing Agreement with Plaintiffs, BCBSM, and Munson Medical Center*

After the 2007 MLR regulations went into effect, plaintiffs allege they "asked BCBSM to ensure that Plaintiffs were obtaining Medicare-Like Rate discounts" for Groups #01019 and 01020. (Dkt. 90 at 14.) BCBSM said "it could not adjust its entire system to calculate MLR on those claims eligible for MLR discounts, but . . . could provide GTB a rate which . . . would be 'close to that which would be payable under the New Regulations' by providing a discount on Plaintiffs' claims for hospital services at Munson Medical Center" to Group #01020. (*Id*. at 15.)

4

"In reliance on this representation," plaintiffs and BCBSM entered into a Facility Claims Processing Agreement ("FCPA") with Munson Medical Center, effective March 1, 2009. (Dkt. 90 at 6; Dkt. 90-4.) The recitals to the FCPA indicate the purpose of the agreement was to facilitate the following: (1) "Munson desires to afford GTB most of the pricing benefits under the New Regulations"; and (2) "BCBSM is willing to accommodate the desire of both Munson and GTB by processing claims . . . at a price they believe is close to that which would be payable under the New Regulations." (Dkt. 90-4 at 2.) This agreement applies only to Group #01020, members of the Tribe who are not employed by the Tribe. (*Id*.) Under the terms of the FCPA, Munson Medical Center agreed to accept as payment in full the discounted rate set by defendant. (Dkt. 90 at 6; Dkt. 90-4 at 3.)

The initial discount rate was eight percent, and defendant was to recalculate the rate each year in accordance with the formula set forth in the FCPA. (Dkt. 90-4 at 3.) Specifically, defendant was required to first calculate two ratios: (i) ratio of all BCBSM PPO payments to all BCBSM PPO charges for Munson claims for the prior calendar year, and (ii) ratio of all payments to all charges for all Medicare claims that Munson

5

reported on its Medicare cost report for its prior calendar year. The new discount for the upcoming year would be the percentage difference between (i) and (ii), if positive. (*Id.*) The FCPA also states that the "arrangement . . . does not require BCBSM to process Munson Claims as if they were, in all other respects, actual Medicare Claims," and "GTB [plaintiff] acknowledges that this arrangement described in this Agreement is satisfactory to it and is in lieu of any claim that the New Regulations apply to any Claims and that Munson and BCBSM are relying on this representation by GTB." (*Id.* at 4.)

Plaintiffs claim that, in 2012, they "decided to . . . obtain a comparison of the costs of going with a different third-party administrator," and after an audit, discovered they were "not paying anything 'close to MLR' on claims." (Dkt. 90 at 16.)

Because plaintiffs were allegedly not receiving the promised discount that would make their payments "close to MLR," they filed suit alleging five state-law claims: breach of Health Care False Claims Act; breach of contract, and alternatively, covenant of good faith and fair dealing; breach of common law fiduciary duty; fraud/misrepresentation; and silent fraud. (Dkt. 90 at 22.)

6

## II.   Legal Standard

Under Fed. R. Civ. P. 12(b)(6), "[a] complaint must state a claim that is plausible on its face." *Johnson v. Moseley*, 790 F.3d 649, 652 (6th Cir. 2015).   A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   In other words, a plaintiff must plead facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).   And a court considering a motion to dismiss must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

## III.   Analysis

Defendant argues the amended complaint should be dismissed because the ERISA count is either time-barred or fails as a matter of law, and the remaining state law claims are either preempted by ERISA or improperly duplicative of other counts.   (Dkt. 94.)

7

## A. Count I: ERISA Violation

Defendant argues that the ERISA count fails as a matter of law and is time-barred.

### *Whether Plaintiffs State an ERISA Claim*

Defendant argues that there is no fiduciary duty to obtain or pursue MLR under ERISA, and that it was not acting as a fiduciary when negotiating payment rates with providers.  (Dkt. 94 at 17–24.)

First, defendant argues there is no fiduciary duty to pursue MLR, as set forth by Judge Ludington in *Saginaw Chippewa Indian Tribe of Mich. et al. v. Blue Cross Blue Shield of Mich.*, Case No. 16-cv-10317, 2016 WL 6276911 (E.D. Mich. Aug. 3, 2016) ("*SCI Tribe*").  In that case, plaintiffs pleaded a breach of fiduciary duty for "paying excess claim amounts to Medicare-participating hospitals for services authorized by a tribe or tribal organization carrying out a CHS program." (Case No. 16-cv-10317, Dkt. 7 at 31.)   And the *SCI Tribe* court interpreted the complaint as alleging an independent fiduciary duty to pursue MLR.  *SCI Tribe*, 2016 WL at *3 ("[Plaintiff] claims . . . that the MLR regulations may have significant and material effects on the rates paid by its plan members, so BCBSM had a duty to be aware of those effects.").

8

Fiduciary duties under ERISA include three components: "(1) the duty of loyalty, which requires 'all decisions regarding an ERISA plan ... be made with an eye single to the interests of the participants and beneficiaries'; (2) the 'prudent person fiduciary obligation,' which requires a plan fiduciary to act with the 'care, skill, prudence, and diligence of a prudent person acting under similar circumstances,' and (3) the exclusive benefit rule, which requires a fiduciary to 'act for the exclusive purpose of providing benefits to plan participants.'" *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 867 (6th Cir. 2013) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2012)).

In this case, plaintiffs have made allegations similar to those considered by the *SCI Tribe* court. But construing the complaint in the light most favorable to plaintiffs, the allegations do not assert a fiduciary duty to obtain MLR, but instead a fiduciary duty to, among other things, preserve plan assets and make decisions with the care of a prudent person, which, as set forth above, are established fiduciary duties. Thus, the issue of whether defendant should have sought a discounted rate in

connection with the MLR regulations appears to be a question of fact, not of law.

In a similar case, *Little Band of Ottawa Indians and its Emp. Welfare Plan v. Blue Cross Blue Shield of Mich.*, 183 F. Supp. 3d 835 (E.D. Mich. 2016), Judge Lawson held that plaintiffs stated a claim because they pleaded defendant "knew that the payments should have been capped" but failed to ensure the rates "were appropriately capped," and rejected BCBSM's argument that "its fiduciary duty did not extend to ensuring that claims were paid at appropriate rates" because that argument was "merely a factual rebuttal to the breach of duty claim." *Id.* at 843.

The Court agrees with Judge Lawson's analysis. Plaintiffs in this case allege that defendant failed to act as a prudent person, to preserve plan assets, and act for the exclusive purpose of providing benefits to beneficiaries—in other words, breached a fiduciary duty—by failing to pursue an avenue to significantly reduce payments by the Plan (in this case "systematically fail[ing] to take advantage of MLR discounts available to Plaintiffs" (Dkt. 90 at 3)) despite knowing the regulations

required providers to accept MLR as full payment even where the parties had negotiated service rates.

Similarly, the plaintiffs in *Little Band* alleged that they "should have been paying no more than Medicare-Like Rates ("MLR") for all levels of care furnished by Medicare-participating hospitals." *Little Band*, 183 F. Supp. 3d at 843. That there is also a separate contract at issue in this case does not alter this analysis. The FCPA is a contract separate from the ERISA plan, and the breach of contract claim therefore is distinct from the ERISA claim, which arises from the ERISA plan and Medicare regulations applicable to those plans, and not the FCPA.

Moreover, as the Supreme Court has recognized, "[t]here is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996). Here, although the plan does not expressly require pursuit of MLR, it is plausible that, in deciding whether to pay claims and whether the negotiated rate should apply, defendant should have requested the provider accept MLR as payment in full as an "ordinary and natural

means" of preserving plan assets and providing benefits to plan beneficiaries. Accordingly, defendant's motion to dismiss on this ground is denied.

Second, defendant argues it was not acting as a fiduciary with respect to negotiating payment rates with providers, and therefore cannot be held liable for breach of fiduciary duty based on failing to pursue MLR.

To state a claim for breach of fiduciary duty, a plaintiff must allege that a defendant was acting as a fiduciary with respect to the conduct at issue. *Pegram v. Herdrich*, 530 U.S. 211, 746–47 (2000). A fiduciary is defined as one who "exercises any discretionary authority or . . . control respecting management of [a] plan, or . . . disposition of its assets," and who "has any discretionary authority or . . . responsibility in the administration of [a] plan." *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) (citing 29 U.S.C. § 1002(21)(A)(i)). Neither party appears to dispute that defendant exercised discretionary authority or control over the plan and its assets; they disagree as to whether defendant was acting in a fiduciary capacity by failing to obtain MLR for plan participants.

Defendant argues that the *Pegram* precedent is fatal to plaintiffs' claims, and also that obtaining MLR is analogous to negotiating rates, which the Sixth Circuit has held is not subject to breach of fiduciary duty claims. *DeLuca v. Blue Cross & Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010).

But defendant's reliance on *Pegram* and *DeLuca* is misplaced. In *Pegram*, the plaintiff argued her physician breached a fiduciary duty under ERISA by making treatment decisions while simultaneously subject to a financial incentive to withhold or reduce treatment. *Pegram*, 530 U.S. at 226. The Supreme Court held that such claims were not cognizable as breach of fiduciary duty claims because "these eligibility determinations cannot be untangled from physicians' judgments about reasonable medical treatment." *Id*. at 229.

The circumstances at issue in *Pegram* are significantly different than the allegations in this case. Here, the parties are not debating whether certain services were medically necessary or covered by the ERISA Plan. Rather, plaintiffs' allegations address only whether defendant failed to preserve plan assets by continually and consistently overpaying claims that defendant found eligible for coverage. In other

13

words, the parties in this case do not dispute whether treatment should have been given or if claims were eligible for coverage under the terms of the Plan, as was the case in *Pegram*.   Thus, this is not a claim where "eligibility decisions cannot be untangled from physicians' judgments about reasonable medical treatment."  530 U.S. at 229.

In *DeLuca*, plaintiff alleged that defendant breached its fiduciary duties by agreeing to increase the rates for PPO plans in exchange for decreases in HMO rates as a means of "equaliz[ing] the rates paid" between the types of plans.  *DeLuca*, 628 F.3d at 746.  The Sixth Circuit held that defendant "was not acting as a fiduciary when it negotiated the challenged rate changes, principally because those business dealings were not directly associated with the benefits plan at issue but were generally applicable to a broad range of health-care consumers."  *Id.* at 747.  More broadly, "a business decision that has an effect on an ERISA plan" is not subject to fiduciary standards, but conduct that "constitutes 'management' or 'administration' of *the plan*" does.  *Id.*

Again, plaintiffs' allegations in this case vary from those addressed by the *DeLuca* court.  Here, plaintiffs are not seeking rate renegotiation on behalf of their individual Plan or arguing that the rate negotiations

14

constituted self-dealing, as in *DeLuca*.   Instead, plaintiffs allege that defendant knew providers were required to accept MLR by regulation in lieu of other rates established via contract, and systematically failed to invoke the regulation, which would have preserved plan assets.   In other words, their argument is that defendant "squandered plan assets under its authority or control," which the *DeLuca* court indicated would implicate fiduciary concerns. *See DeLuca*, 628 F.3d at 747–48. Moreover, the allegations involve the "trustee's most defining concern historically": "the payment of money in the interest of the beneficiary." *Pegram*, 530 U.S. at 231.

Defendant next argues that permitting this cause of action would create a "novel cause[] of action not expressly authorized by the text of [ERISA]," and "the Supreme Court has repeatedly warned courts against permitting" such suits. *Clark v. Feder Semo and Bard, P.C.*, 739 F.3d 28, 29 (D.C. Cir. 2014).

But permitting this cause of action would not create a novel cause of action of the kind at issue in *Clark* or the Supreme Court cases cited by the *Clark* court.   In *Clark*, plaintiff attempted to argue the plan administrator breached its fiduciary duty pursuant to 29 U.S.C. § 1344,

15

which imposed enforcement obligations on the Secretary of the Treasury. The D.C. Circuit held that section 1344's "authority for the Secretary" could not become "the source of a duty for a plan fiduciary." *Clark*, 739 F.3d at 30. And in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), relied on by the *Clark* court, the Supreme Court held that plaintiffs were not entitled to damages under section 502(a)(3)(A) because the text envisioned only injunctive or "appropriate equitable relief." 534 U.S. at 209–10.

By contrast, requiring defendant to take into account regulations that directly affect how it administers and manages plan assets would not create new remedies or conflict with statutory text that entrusts enforcement to an agency. Instead, as the *Clark* court pointed out, "general principles of fiduciary law imported into ERISA . . . set bounds on the distributions [fiduciaries] authorize[]," 739 F.3d at 30, which is precisely the type of action at issue here. Moreover, alleging that defendant should have taken the MLR regulations into account when determining how much to pay out of plan assets boils down to a basic legal proposition that is neither novel nor controversial: fiduciaries must administer plans in compliance with federal laws. And although ERISA

16

is a comprehensive regime, "the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory regime." *In re WorldCom, Inc.*, 263 F. Supp. 2d, 745, 766–67 (S.D.N.Y. 2003) (rejecting argument that "tension between the federal securities laws and ERISA" required dismissal, and holding ERISA fiduciaries cannot transmit false information to plan participants); *see also In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 792 (N.D. Ohio 2006) ("compliance with securities laws does not negate their requirement to comply with other laws, such as ERISA").

In sum, plaintiffs assert that defendant acted as a fiduciary in determining how much to pay on claims that it knew were subject to the MLR regulations because it had discretion to pay the lower rate rather than the contractual rate, as the MLR regulations clearly state. And for the reasons set forth above, defendant has failed to demonstrate that such allegations are barred by precedent or would improperly interfere with ERISA's statutory regime. Accordingly, plaintiffs have sufficiently pleaded that defendant was acting as a fiduciary when it paid out claims

17

eligible for MLR, and defendant's motion to dismiss this claim as to Group #01020 on this ground is denied.

### Whether the ERISA Claim is Time-Barred

Defendant next argues that the ERISA claim is barred by the statute of limitations because plaintiffs had actual knowledge by March 2009 that they were not receiving Medicare-Like Rates ("MLR"), when they entered into the FCPA with the intention of obtaining MLR for Group #01020.  (Dkt. 94 at 13.)

Plaintiffs claim they did not know the "full extent of BCBSM's wrongful conduct until 2013" because defendant misrepresented to plaintiff that the FCPA discount would provide them with rates close to MLR.  (Dkt. 90 at 18; Dkt. 96 at 16.)   They further argue that because of these representations, the six-year period applies, or equitable tolling should apply.

"ERISA specifies a three- or six-year limitations period for claims of breach of fiduciary duty."  *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 376 (6th Cir. 2015) (citing 29 U.S.C. § 1113).   The six-year limitations applies "after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the

latest date on which the fiduciary could have cured the breach or violation." *Id*. Thus, when the duty at issue is a continuing duty, such as the duty to inform, "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." *Tibble v. Edison Int'l*, ___ U.S. ___, 135 S. Ct. 1823, 1828–29 (2015); *Durand*, 806 F.3d at 376.

"[A]n accelerated three-year limitations period is triggered as of 'the earliest date on which the plaintiff had actual knowledge of the breach." *Id*. "Actual knowledge means 'knowledge of the facts or transaction that constituted the alleged violation,'" and a plaintiff is deemed to have actual knowledge "when he or she has 'knowledge of all the relevant facts, not that the facts establish a cognizable legal claim.'" *Brown v. Owens Coring Inv. Rev. Cmte.*, 622 F.3d 564, 570 (6th Cir. 2010).

Additionally, "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1119.

First, with respect to Group #01019, the complaint indicates that prior to entering into the FCPA in March 2009, plaintiffs asked defendant to ensure they were receiving MLR, and were informed "BCBSM replied

19

that it could not adjust its entire system."  Nothing in the complaint shows that defendant represented to plaintiff at that time or at a later date that it would pursue MLR for Group #01019.[2]  Plaintiffs argue the burden is on defendant to prove the limitations period has expired, but when the face of the complaint indicates the claim is untimely, a plaintiff has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). And because plaintiffs did not plead facts in the complaint that would plausibly indicate they lacked actual knowledge in 2009 or that defendant made misrepresentations to them regarding MLR for Group #01019, the claim should have been brought by March 1, 2012 at the latest.  Accordingly, the ERISA claim as it pertains to Group #01019 is untimely.

Next, with respect to Group #01020, plaintiffs argue that they relied on defendant's representation that they would receive rates close to MLR, as evidenced by their decision to sign the FCPA, and defendant

---

[2] Plaintiffs also attempt to introduce evidence not referred to in the complaint to argue defendant "consistently represented to Plaintiffs that BCBSM was developing a process to provide Medicare-Like Rate pricing to all Plan participants who were tribal members." (Dkt. 96 at 18.)  But on a motion to dismiss, the Court may consider only the allegations in the complaint.  Thus, the issue is whether it is clear from the face of the complaint that plaintiffs had actual knowledge in 2009 or 2013.

concealed from them the fact that they were not receiving such rates. But, as plaintiffs have taken pains to make clear, the FCPA is not governed by ERISA and is separate from the original agreement entered into with defendant.  (*See* Dkt. 90 at 6 ("Plaintiffs' claims for breach of fiduciary duty under ERISA are separate and distinct from Plaintiffs' claim for breach of the FCPA"; describing FCPA as "separate contractual agreement").)  In fact, plaintiffs entered in to the FCPA *because* they knew they were not receiving MLR under the Plan governed by ERISA. Thus, any fraud or concealment would relate to the FCPA, and not the ERISA claim, and the three-year statute of limitations applies.

Plaintiffs argue that the ERISA claim is broader than the breach of contract issue because the FCPA applied to services only from Munson Medical Center, while the Plan applied to all Medicare-participating hospitals.  (Dkt. 90 at 6.)  While this is true, as with Group #01019, the complaint alleges nothing that would permit the inference that plaintiffs lacked knowledge with respect to these other providers by March 2009.

In sum, plaintiffs had actual knowledge by March 1, 2009 that they were not receiving MLR for Group #01020, and because the case was filed in 2014, the ERISA claim as to Group #01020 is untimely.

21

## B. Counts II-VI: State Law Claims

Defendant argues that ERISA preempts Count II, part of Count III (good faith and fair dealing), and Count IV. (Dkt. 94 at 24.) Defendant also argues that Counts V and VI are improperly duplicative of the breach of contract claim. (*Id.* at 26.)

Plaintiffs concur that ERISA preempts Counts II and IV (Dkt. 96 at 29), and these counts are dismissed.

### *Count III: Breach of Contract and Implied Covenant of Good Faith and Fair Dealing*

Defendant argues ERISA preempts plaintiffs' claim that it breached the implied covenant of good faith and fair dealing, and also that Michigan does not recognize this covenant as an independent cause of action. Defendant does not challenge the breach of contract claim. Plaintiffs make no argument as to why their claim under the implied covenant should not be dismissed.

Under Michigan law, there is no independent cause of action for a breach of the implied covenant of good faith and fair dealing. This implied covenant "applies to the performance and enforcement of contracts," and a breach of this covenant may be invoked as a breach of contract claim only when one party "makes its performance a matter of

22

its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003).  "Discretion arises when the parties have agreed to defer decision on a particular term of the contract," id. at 826, or "omits terms or provides ambiguous terms." *Wedding Belles v. SBC Ameritech Corp., Inc.*, Case No. 250103, 2005 WL 292270, at *1 (Mich. App. Feb. 8, 2005). "Whether a performance is a matter of a party's discretion depends on the nature of the agreement." *ParaData Comp. Networks, Inc. v. Telebit Corp.*, 830 F. Supp. 1001, 1005 (E.D. Mich. 1993).  A party may not invoke the implied covenant of good faith and fair dealing to override express contract terms." *Stephenson*, 328 F.3d at 826; *Gen. Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990).

Here, the FCPA does not leave defendant with discretion as to whether to pay the discount or how to calculate it.  There is a formula for calculating the discount, and defendant is obligated to pay that amount. Further, no terms appear to be omitted.  Thus, plaintiffs may not rely on the implied covenant as an alternative to their breach of contract claim. Accordingly, defendant's motion to dismiss this part of Count III is granted.

### *Counts V and VI: Fraud and Silent Fraud*

Defendants argue that Counts V and VI must be dismissed as improperly duplicative of plaintiffs' breach of contract claim. (Dkt. 94 at 26.)

Under Michigan law, "[w]hen a contract governs the relationship between the parties, the plaintiff must allege a 'violation of a legal duty separate and distinct from the contractual obligation' to support a fraud claim." *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 802 (E.D. Mich. 2012) (quoting *Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 84 (1997)).

Here, plaintiffs argue defendant breached the contract by failing to provide it with the FCPA discount. They separately argue that defendant is liable for fraud and silent fraud by (1) representing repeatedly to plaintiffs between 2009 and 2012 that the FCPA discount would be close to MLR while knowing this to be false; and (2) failing to disclose that the FCPA discount was not close to MLR despite being obligated to do so. But any obligation to provide rates close to MLR and any obligation to disclose such discrepancies between the FCPA and MLR rates arise solely from the existence of the FCPA. Thus, there is no legal basis or

24

duty separate from the contract that would permit plaintiff to plead fraud and silent fraud claims. *Leonor v. Provident Life and Acc. Co.*, Case No. 12-cv-15343, 2013 WL 1163375, at *2–3 (E.D. Mich. Mar. 20, 2013) (alleged fraud that plaintiff would receive benefits arose from contractual obligation to pay plaintiff and fraud claim was not actionable; collecting cases holding the same). Accordingly, defendant's motion to dismiss these counts is granted.

## IV.   Conclusion

For the reasons set forth above, defendant's motion to dismiss (Dkt. 94) is GRANTED as to Count I, Count II, Count III (implied covenant of good faith and fair dealing only), Count IV, Count V, and Count VI.

IT IS SO ORDERED.

Dated: July 21, 2017                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2017.

<u>s/Shawna Burns</u>
SHAWNA BURNS
Case Manager