# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

The Grand Traverse Band of
Ottawa and Chippewa Indians,
and Its Employee Welfare Plan

                Plaintiffs,

v.

Blue Cross and Blue Shield of
Michigan,

                Defendant.

_____/

Case No. 14-cv-11349

Judith E. Levy
United States District Judge

Mag. Judge Mona K. Majzoub

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [117]

In its earlier stages, this case was about claims brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001; now, this case is about state law violations regarding non-employee group health insurance. Plaintiffs, the Grand Traverse Band of Ottawa and Chippewa Indians ("the Tribe") and its Employee Welfare Plan ("the Plan") raise EIRSA, state law breach of contract, Michigan's Health Care False Claims Act ("HCFCA"), Mich. Comp. Laws § 752.1001, common law fiduciary duty, and other common law tort claims against defendant Blue

Cross Blue Shield of Michigan ("BCBSM"), the Plan administrator. Previously, the Court rejected all of plaintiffs' claims except its breach of contract claim, in part because the parties agreed that the breach of common law fiduciary duty and the HCFCA claims were preempted by ERISA. However, the parties agreed to reinstate the common law fiduciary duty and HCFCA claims in the wake of the Sixth Circuit's decision in *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 748 F. App'x 12 (6th Cir. 2018). Before the Court is defendant's motion to dismiss those two claims.

## I.    Background

The Court provided a complete factual background of the underlying claims in its previous opinion and order granting in part and denying in part defendant's motion to dismiss, which it reincorporates fully here. (Dkt. 99 at 2–6.) For clarity, the Court summarizes the background and notes new developments in the case's procedural history.

The Tribe is federally-recognized. The Tribe maintains a self-funded employee welfare plan, the Plan, which covers three groups of participants: members of the Tribe who are employed by the Tribe (Group #01010); members of the Tribe who are not employed by the Tribe (Group

#01020); and employees of the Tribe who are not members of the Tribe (#48571). BCBSM has been the Plan administrator since 2000. (Dkt. 90-2 at 3.)

In 2007, new federal regulations went into effect which provided that "[a]ll Medicare-participating hospitals . . . must accept no more than the rates of payment under the methodology described in this section as payment in full for all terms and services authorized by [Indian Health Service], Tribal, and urban Indian organization entities," and even if the parties had negotiated different rates, tribes would "pay the lesser of" the amount determined by the methodology and the negotiated amount. 42 C.F.R. §§ 136.30(a), (f). These are known as the "Medicare-Like Rates" ("MLR") regulations.

Plaintiffs allege that they asked BCBSM to ensure that they were receiving MLR for the Tribe member groups, Groups #01019 and #01020. (Dkt. 90 at 14). BCBSM claimed that "it could not adjust its entire system to calculate MLR on those claims eligible for MLR discounts," but could provide a rate that would be close to MLR by providing a discount for plaintiffs' claims for services at the Munson Medical Center to Group #01020, the non-employee Tribe members. (*Id.* at 15.) This led the parties

to enter into the Facility Claims Process Agreement ("FCPA") with Munson Medical Center, effective on March 1, 2009. (Dkt. 90 at 6; Dkt. 90-4.) However, in 2012, plaintiffs obtained a third-party audit and discovered that they were "not paying anything 'close to MLR' on claims." (Dkt. 90 at 16.) They state that they "did not discover the full extent of BCBSM's" conduct until 2013. (*E.g.*, *id.* at 19.)

Plaintiffs filed their first complaint on April 1, 2014. (Dkt. 1.) On January 24, 2019, plaintiffs were permitted to file an amended complaint, alleging breach of fiduciary duty under ERISA, violations of the HCFCA, breach of contract and the covenant of good faith and fair dealing in the alternative, breach of common law fiduciary duty, fraud and misrepresentation, and silent fraud. (Dkt. 90.) BCBSM filed a motion to dismiss those claims (Dkt. 94), which the Court granted in part and denied in part. (Dkt. 99.) The Court dismissed all claims except for the breach of contract claim, noting that the parties agreed that the breach of common law fiduciary duty and HCFCA claims were preempted by ERISA. (*Id.* at 22, 25.) Plaintiffs filed a motion for reconsideration (Dkt. 101) and a motion to file a second amended complaint (Dkt. 102), and both were denied. (Dkt. 107.)

In August 2018, the Sixth Circuit held that the Saginaw Chippewa Indian Tribe of Michigan's Welfare Benefit Plan was not an ERISA plan when it covered non-employee Tribe members. *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 748 F. App'x 12, 19 (6th Cir. 2018). Because this undermined the parties' previous agreement that all claims for violations of HCFCA and breach of common law fiduciary duty were preempted by ERISA, the parties agreed to reinstate those claims as to Group #01020, the non-employee Tribe members, for the purpose of testing that legal theory in this case. (Dkt. 116.) The motion to dismiss before the Court followed (Dkt. 117) and is now fully briefed.[1] (Dkts. 119, 120.)

## II.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v.*

---

[1] Defendant filed a notice of supplemental authority regarding *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, No. 16-cv-10317 (E.D. Mich. April 26, 2019). (Dkts. 121, 121-1.) This installment of *Saginaw* has no impact on the outcome of this motion. It declines to address the merits of the motion to dismiss the ERISA and HCFCA claims until there is "further factual development" in discovery. (Dkt. 121-1 at 22.) Further, the fiduciary duty claim at issue in *Saginaw* is one under ERISA (*id.* at 4), not state law.

*Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.  Analysis

For the reasons set forth below, plaintiffs raise claims under the HCFCA and for breach of common law fiduciary duty, but only state a claim as to the HCFCA. Plaintiffs have statutory standing under the HCFCA. However, their breach of fiduciary duty claim, although cognizable, is barred by the statute of limitations.

### A. Health Care False Claims Act

In its motion, defendant argues that plaintiffs lack statutory standing under the HCFCA. (Dkt. 117 at 11.) It is undisputed that

plaintiffs must meet the definition of a "health care insurer" to have statutory standing under the HCFCA. Mich. Comp. Laws § 752.1009 ("A person who knowingly presents or causes to be presented a claim which contains a false statement, shall be liable *to the health care corporation or health care insurer* for the full amount of the benefit or payment made." (emphasis added)). A "health care insurer" is "any legal entity which is self-insured and *providing health care benefits to its employees*." Mich. Comp. Laws § 752.1002(f) (emphasis added). The Plan is self-insured, and so the only remaining question is whether plaintiffs are "providing health care benefits to its employees" in relation to the non-employee Tribe members, Group #01020.

Statutory standing is a matter of statutory interpretation. *Miller v. Allstate Ins. Co.,* 481 Mich. 601, 607 (2008) (quoting *Graden v. Conexant Sys., Inc.,* 496 F.3d 291, 295 (3d Cir. 2007)). "When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent . . . ." *Perkovic v. Zurich Am. Ins. Co.*, 500 Mich. 44, 49 (2017) (citing *Jesperson v. Auto Club. Ins. Ass'n*, 499 Mich. 29, 34 (2016)). And the key question when interpreting statutory standing provisions is "whether [the Legislature] has accorded *this* injured

plaintiff the right to sue the defendant to redress his injury." *Miller,* 481 Mich. at 607 (emphasis in original) (quoting *Graden,* 496 F.3d at 295).

"[C]lear and unambiguous" statutory language is the best evidence of legislative intent. *Perkovic*, 500 Mich. at 49 (citing *Jesperson*, 499 Mich. at 34). When interpreting statutory language, courts "enforce such language as written, giving effect to every word, phrase, and clause," *id.* (same), meaning that "every . . . word in the statute must be read and understood in its grammatical context," *Herman v. Berrien Cty.*, 481 Mich. 352, 366 (2008) (quoting *Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 237 (1999)). Generally, "[i]ndividual words and phrases . . . should be read in the context of the entire legislative scheme." *Bush v. Shabahang*, 484 Mich. 156, 167 (2009) (footnotes omitted). If "the language of the statute is unambiguous," "no further judicial construction is required or permitted"; but if the language is ambiguous, courts may use other methods of interpretation "to ascertain legislative intent." *City of Coldwater v. Consumer's Energy Co.*, 500 Mich. 150, 167 (2017) (quoting *Sun Valley*, 460 Mich. at 236).

When the text of the statute is ambiguous because two equally reasonable readings are possible, courts "should give effect to the

interpretation that more faithfully advances the legislative purpose behind the statute." *People v. Adair*, 452 Mich. 473, 479–80 (1996) (citing *People v. Rehkopf*, 422 Mich. 198, 207 (1985)). "Statutes must [also] be construed to prevent absurd results." *People v. Tennyson*, 487 Mich. 730, 741 (2010) (quoting *Rafferty v. Markovitz,* 461 Mich. 265, 270 (1999)). In this case, plaintiffs offer a plain language interpretation that is in accord with these principles. But even if the Court were to consider the text ambiguous, the legislative purpose and scheme and the canon against absurdity still support plaintiffs' interpretation of the "providing" clause.

Statutory interpretation begins with the text of the statute. The text at issue here is "'health care insurer' means . . . any legal entity which *is* self-insured and *providing health care benefits to its employees*." § 752.1002(f) (emphasis added). "[P]roviding" is a form of "to provide," meaning "to supply or make available."[2] And because "providing" modifies a verb, "is," it is a present participle. *City of Coldwater*, 500 Mich. at 176–77. Present participles connote continuous action. *City of Coldwater*, 500 Mich. at 176–77. Therefore, "is . . . providing" here means

---

[2]    *Provide*, Merriam Webster's Dictionary, https://www.merriam-webster.com/dictionary/provide (last updated May 20, 2019).

to continuously supply or make available health care benefits to employees. This much is agreed upon by the parties, but plaintiffs and defendant both argue that the plain-text reading of "is . . . providing" favors their respective positions.

Defendant argues that a plain-text reading of "is . . . providing" means that self-insured entities like plaintiffs are only health care insurers when or while they are providing benefits to their employees (*see* Dkt. 117 at 11–12; Dkt. 120 at 2–6),[3] but this argument is unpersuasive. As illustrated by the Court's explanation, defendant's interpretation is contrary to the plain text because it rewrites the provision to read "while providing" or "when providing." However, this turns "providing" into a participial preposition that modifies "health care insurer." This interpretation changes the grammatical function of "providing" from modifying "is" to modifying "health care insurer." This gives "providing" a restrictive or limiting function that it did not previously have. In other words, "providing" goes from being a verb to a modifier. For these

_____

[3] Only self-insured legal entities that also offer benefits to non-employees are self-insured legal entities that can raise a claim under the HCFCA now. *Cf.* § 752.1002(f) (providing that insurance companies may also be health care insurers). As the parties agree, ERISA preempts the HCFCA, and as *Saginaw* recently clarified, ERISA only applies to employee-plans.

reasons, defendant's interpretation is not grammatically sound, and the Court cannot rewrite the statute and must assume the legislature did not mean what it did not say.

In contrast, plaintiffs argue that the "providing" clause should be read as a threshold requirement, meaning that as long as plaintiffs are continuously supplying health care benefits to employees, they are health care insurers for all purposes under the HCFCA (Dkt. 119 at 12), and the Court agrees. This interpretation does not rewrite the statute in any way or change the grammatical function of any words. Moreover, this interpretation also gives meaningful force to every word and phrase. Once a self-insured entity offers health care benefits to employees continuously, it is a health care insurer. This reading avoids rendering the phrase "is . . . providing" a restrictive, prepositional phrase when it is not written that way. Therefore, interpreting "providing" as a threshold requirement is the plain text definition.

Out of an abundance of caution, however, the Court considers the best-case scenario for defendant—that the plain text is ambiguous, and so it is necessary to consider the legislative purpose and other canons of construction. However, the legislative purpose and scheme and canon

against absurdity demonstrate that "providing" is best interpreted as a threshold requirement.

First, the legislative purpose and scheme counsel in favor of reading "providing" as a threshold requirement. The preamble of the HCFCA declares a clear purpose: "to prohibit fraud in the obtaining of benefits or payments in connection with health care coverage and insurance" and "to provide for . . . certain civil actions." Mich. Comp. Laws Ch. 752, Refs & Annos, *amended by* P.A. 1996, No. 226, § 1 (June 5, 1996); *State ex rel. Gurganus v. CVS Caremark Corp.,* Nos. 299997, 29998, 299999, 2013 Mich. App. LEXIS 113, at *26 (Jan. 22, 2013), *rev'd on other grounds*, 496 Mich. 45 (2014). Reading "providing" as a threshold requirement best effectuates the purpose of the HCFCA to prevent fraud and provide a remedy for it.

Under defendant's reading, plaintiffs would receive no special protection or redress against healthcare-based fraud even though they offer health care benefits and insurance. Defendant offers no reasonable explanation, nor can the Court think of one, why the legislature would exclude tribes and their plans from the HCFCA's protection, or why health care fraud is less concerning when tribes are the insurer.

Generally, entities self-insure as a matter of convenience, i.e. there is a large enough number of members to evenly distribute the costs of the policy. Employers are often self-insured because they have access to large, organized groups that permit them to offer group health insurance at a rate that is not prohibitively high. It also happens that tribes are similarly positioned with respect to their own members. The Court could not find another entity in Michigan other than employers and tribes that self-insure. It is doubtful that the Michigan Legislature would draft a statute that would grant a remedy to nearly all self-insured employers except the non-employee Tribe members of the twelve[4] or fewer self-insured tribes in Michigan. Consequently, reading "providing" as a threshold requirement, not a durational requirement, evinces the state legislature's intent.

Second, interpreting "providing" as a durational requirement would lead to absurd results because plaintiffs would be health care insurers as to employees, but not as to non-employees, even where plaintiffs are offering the same health care benefits. The Court cannot guess why the

---

[4] There are twelve federally recognized tribes in Michigan. *Federally Recognized Tribes in Michigan,* Mich. Dep't of Health & Hum. Servs., https://www.michigan.gov/mdhhs/0,5885,7-339-73971_7209-216627--,00.html (last visited May 20, 2019).

legislature would desire this outcome when both plans would be equally susceptible to fraud. The Court has rejected analogous statutory interpretation arguments when it would lead to inconsistent application of the statute without a persuasive justification. *Zen Design Grp. Ltd. v. Scholastic, Inc.*, No. 16-12936, 2017 U.S. Dist. LEXIS 91926, slip op. at *16 (E.D. Mich. Apr. 11, 2018) (interpreting a statute so that patent protection would apply to the device in question continuously, not only when the device was presently "emitting" light). The same is true here. It is inexplicable why plaintiffs would be health insurers as to one group but not another.

For these reasons, plaintiffs are health care insurers within the meaning of the HCFCA and have statutory standing. Therefore, they state a claim for which relief can be granted.

### B. Common Law Breach of Fiduciary Duty

Defendant also argues that plaintiffs fail to state a claim for breach of common law fiduciary duty. Specifically, it argues that the statute of limitations bars the claim (Dkt. 117 at 13–14), and in its reply brief, defendant argues for the first time that the fiduciary duty claim is not cognizable under Michigan law. (Dkt. 120 at 8–9.) But defendant

misconstrues Michigan law and the Court's previous rulings; plaintiff states a claim for which relief may be granted because its fiduciary duty claim is cognizable[5], and it is not barred by the statute of limitations.

### i. Cognizability

In Michigan "a plaintiff '[may] not maintain an action in tort for nonperformance of a contract.'" *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (2015) (quoting *Ferrett v. Gen. Motors Corp.*, 438 Mich. 235, 247 (1991)). But "[t]his does not mean . . . that all tort claims are barred when there is a contract between the parties." *Galeana Telecomms. Invs., Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 722–23 (E.D. Mich. 2016); *Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 489 Mich. 157, 170–71 (2011) ("[T]he existence of a contract [also] does not extinguish duties of care otherwise existing . . . ." (quoting 1 Torts: Michigan Law and Practice, § 10.18, 10–25)).

To determine "whether a [tort] action based on a contract . . . may lie," courts apply the "'separate and distinct' mode of analysis." *Fultz v.*

---

[5] Arguments raised for the first time in a reply brief are considered waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Because the cognizability argument is resolved in favor of plaintiffs, the parties most prejudiced by the timing of defendant's argument due to their inability to respond, the Court considers defendant's argument and declines to order additional briefing.

*Union-Commerce Assocs.*, 470 Mich. 460, 467 (2004). Specifically, courts ask, "[w]hether a particular defendant owes *any duty at all* to a particular plaintiff." *Loweke*, 489 Mich. at 168 (quoting *Fultz*, 470 Mich. at 467). Notably, the separate and distinct principle focuses on the *duties* defendant owes, not "whether defendant's *conduct* was separate and distinct from the tasks required by the contract."[6] *Id.* at 169 (emphasis added) (citing *Davis v. Venture One Constr., Inc.*, 568 F.3d 570, 576 (6th Cir. 2009)).

In fact, a separate and distinct analysis "generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether plaintiff's injury was contemplated by the contract." *Id.* at 169 (same). On this point, the Michigan Supreme Court is clear: "[C]ourts should not permit the contents of the contract to obscure the threshold question of whether any independent legal duty to

---

[6] Federal and state courts disagree whether the separate and distinct principle applies to cases where the parties are in privity. *See Hamilton v. Nochimson*, No. 09-13366, 2010 U.S. Dist. LEXIS 17942, at *5–7 (E.D. Mich. March 2, 2010) (collecting cases noting disagreement); *see also Mapal, Inc. v. Astaria*, 147 F. Supp. 3d 670, 682–83 (E.D. Mich. 2015) (stating in dicta that *Loweke* was distinguishable from the case at bar because the parties in *Loweke* were not in privity). Importantly, there is no binding decision holding that the principle would not apply when the parties are in privity, as here. The Michigan Supreme Court has even applied the principle when parties were in privity. *See Hill v. Sears, Roebeck & Co.*, 492 Mich. 651, 662–63, 671–72 (2012).

the [plaintiff] exists, the breach of which could result in tort liability." *Id.* at 171. *But see Calhoun Cty. v. Blue Cross Blue Shield of Mich.*, 297 Mich. App. 1, 21 (2012) (considering whether the conduct at issue was the subject of the contract, rather than whether a separate legal duty exists). In this case, there is a fiduciary relationship and so defendant owes plaintiffs a fiduciary duty that is separate and distinct from its contractual duties set forth in the FCPA.

## 1. Fiduciary Relationship

For a fiduciary duty to exist, a fiduciary relationship must also exist. A fiduciary relationship may arise "when one person assumes control and responsibilities over another." *Calhoun*, 297 Mich. App. at 20. That a relationship is based on a contract does not prevent the formation of a fiduciary relationship. *See Dental Assocs., P.C., v. Am. Dental Partners of Mich., LLC*, 520 F. App'x 349, 352 (6th Cir. 2013) (noting that the breach of fiduciary duty arose from the fiduciary relationship established under the "Service Agreement"). *But see Global Fleet Sales, LLC v. Delunas*, No. 12-15471, 2016 U.S. Dist. LEXIS 76975, at *27–28 (E.D. Mich. June 14, 2016) (holding that a breach of fiduciary duty claim was barred by the separate and distinct principle because lower Michigan

courts have held that in the partnership context, fiduciary duties are creatures of the partnership contract). However, contractual language may prevent the formation of a fiduciary relationship. *McLaren Reg'l Med. Ctr. v. Complex RX, Ltd.,* No. 16-14268, 2017 U.S. Dist. Lexis 111561, at *19–20 (E.D. Mich. July 18, 2017) (holding that the contractual language, "[n]othing in this Agreement should be construed to create [another] relationship other than as independent contracting entities," foreclosed finding that there was a fiduciary relationship). Whether a fiduciary relationship exists is a question of fact. *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1345 (E.D. Mich. 2011) (quoting *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 515 (1981)).

Here, plaintiff pleads facts that, if proven true, show a fiduciary relationship exists under Michigan law, which defendants do not dispute. (Dkt. 117 at 13–14.) Plaintiffs allege that under the Administrative Services Contract ("ASC"), the parties entered a fiduciary relationship. (Dkt. 90 at 10.) Plaintiffs explain that as an administrator, defendant "was required to make decisions about whether to pay a health care claim from Plan funds, and how much to pay from Plan funds, with the

18

Plaintiffs' bests interest in mind and in a manner that preserved Plan assets" and to do so "with the care, skill, prudence, and diligence of a prudent person." (*Id.* at 3.) Moreover, plaintiffs attach the ASC itself, which supports this interpretation of the relationship.[7] Although the ASC provides some limitations on defendant's responsibilities and disclaims defendant's role as an ERISA fiduciary (Dkt. 90-2 at 3–4), it does not contain prohibitive language about a common law fiduciary relationship as in *McLaren*. In the light most favorable to plaintiffs, the duties set forth by the ASC satisfies *Calhoun* and the ASC and creates a fiduciary duty similar to that in *Dental Associates*.

## 2. Separate and Distinct Analysis

A fiduciary duty existed that is separate and distinct from the FCPA. *Loweke* requires the Court to consider whether defendant has any duty at all to act for plaintiffs that exists separately and distinctly from the FCPA, and here, a legal duty does exist apart from the FCPA. Moreover, *Loweke* is clear—the focus is on whether any legal duty exists separately and distinctly from the contract, not whether the conduct is

---

[7] The court may consider such an attachment at the motion to dismiss stage if it is "referred to in the plaintiff's complaint" and is "central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Such is the case here.

contemplated by the contract. Even if the FCPA did not exist, defendant would have a fiduciary duty to manage the Plan with plaintiffs' best interest in mind and to act as a reasonably prudent investor and not squander plan assets based on the ASC. Therefore, plaintiffs have stated a claim that is the separate and distinct from their contractual breach claim regarding the FCPA.

Defendant argues that the Court's previous ruling that the state fraud claims were barred is dispositive to the breach of common law fiduciary duty claim (Dkt. 120 at 7–8), but this argument is unpersuasive. Earlier, the Court held that plaintiffs' fraud claims that defendants made misrepresentations about MLR and failed to disclose when plaintiffs were not receiving MLR were not cognizable because "any obligation to provide rates close to MLR and any obligation to disclose such discrepancies . . . arose from the existence of the FCPA." (Dkt. 99 at 24–25.) In other words, plaintiffs could not point to a duty separate and distinct from the FCPA that required defendant to deliver MLR and disclose when MLR were not delivered. But here, plaintiffs plead that

defendant had an obligation to meet its fiduciary duty that did not arise from the FCPA.[8] Plaintiffs' fiduciary duty claim is therefore cognizable.

## ii. *Statute of Limitations*

Defendant also argues that this claim is untimely. Plaintiffs' claim that defendant breached its common law fiduciary duty is subject to a three-year statute of limitations. Mich. Comp. Laws § 600.5805(2). A breach of fiduciary duty claim "accrues when the beneficiary knew or should have known of the breach." *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39, 47 (2005) (quoting *Bay Mills Indian Cmty. v. Michigan*, 244 Mich. App. 739, 751 (2001)). Here,

---

[8] Although whether defendant violated its contractual obligations by failing to deliver MLR or violated its fiduciary duties by squandering plan assets, not prudently managing, etc., may seem like semantics because the underlying violative conduct is the same, the distinction is crucial. The separate and distinct principle focuses on whether there are distinct duties, and thus the Michigan Supreme Court contemplated that the same conduct could lead to more than one origin for liability. Indeed, the Michigan Supreme Court could decide to apply the doctrine of economic loss in all contracting contexts, but it has not done so to date. *Galeana*, 202 F. Supp. 3d at 724 (citing *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 (6th Cir. 1995)) (explaining that in Michigan the doctrine only applies to the commercial sale of goods). The doctrine of economic loss focuses on the injury-causing conduct by prohibiting plaintiffs from collecting economic damages for the same wrongful conduct twice—once in tort and once in contract. *See Cleveland Indians Baseball Co., L.P. v. N.H. Ins. Co.*, 727 F.3d 633, 640 (6th Cir. 2013). Although some "courts have conflated the economic loss doctrine with the 'separate and distinct' principle," *Global Fleet Sales*, 2016 U.S. Dist. LEXIS 76975, at *23 n.3 (collecting cases), the approaches remain distinctive.

plaintiffs knew the fiduciary breach occurred in 2009, and so the claim is time-barred.

Plaintiffs admit that in 2009, they had actual knowledge that defendant was violating its fiduciary duty. (Dkt. 119 at 116.) In 2000, the parties signed the ASC, establishing a fiduciary relationship. (Dkt. 90-2 at 15.) After the 2007 regulations went into effect, "BCBSM's fail[ed] to take advantage of MLR discounts . . . [and this] was a breach of BCBSM's fiduciary duties under ERISA" (Dkt. 90 at 4–5), and the parties do not dispute these duties are identical to common law fiduciary duties. Then plaintiffs learned in 2009 that they were not receiving MLR discounts, i.e. that defendant was violating its fiduciary duty under ERISA. Defendant's conduct at this point, whether it be characterized as not offering competitive rates, preserving plan assets, etc. or offering rates close to MLR, breached its common law fiduciary duties to prudently manage funds and act with plaintiffs' best interests in mind.[9] Therefore,

---

[9] A hypothetical scenario may clarify this point. Assume that the statute of limitations is not at issue and the breach of contract and fiduciary duty claims exist at the same time. Further assume that a rate close to MLR is between 5 and 5.5% and a competitive market rate is 6%. Defendant gives plaintiffs a rate of 7%. This conduct violates the FCPA that requires close to MLR and the common law fiduciary duties to act as a prudent investor and with the best interests of the beneficiary in mind, which here would at least require a competive market rate. Although the conduct is singular, it breaches two separate duties. *See supra*, p. 21 n.8.

the latest that plaintiffs could have brought the claim is 2012. The claim was not filed until 2014, and so it is time-barred.

Plaintiffs raise two counterarguments. First, they argue that there is "a second type of 'wrong' by BCBSM," which is that defendant violated its common law fiduciary duties after the parties "entered into the FCPA in 2009 to specifically address BCBSM's past squandering of plan assets" and that it did not know of that breach of fiduciary duty until after the audit in 2012. (Dkt. 119 at 16, 18.) In other words, plaintiffs only maintain the breach of fiduciary duty claim from the point that the FCPA was signed and onward. (*Id.* at 7 n.2.) But plaintiffs cannot have it both ways. Plaintiffs have prevailed on the separate and distinct analysis and are therefore permitted to raise both a fiduciary duty and contractual breach claim. They cannot now conflate the separate duties by arguing the FCPA somehow reinvigorated the fiduciary duty or created a new fiduciary duty, in effect resetting the clock on the claim. The claim cannot be maintained after 2009 because plaintiffs knew of the breach in 2009— that defendant continued to breach its fiduciary duties and plaintiffs did not realize this until 2012 is not relevant to the question of when they first knew of the breach of fiduciary duty, as is the fact that plaintiffs

sought to put additional pressure on defendant by entering the FCPA to impose specific contractual terms.

Second, plaintiffs argue that the statute of limitations should be tolled. They appear to raise two arguments: that defendant fraudulently concealed the claim by failing to disclose the second breach of fiduciary duty and by making an affirmative misrepresentation by entering the FCPA. There is no legal support for either argument.

First, plaintiffs argue that defendant failed to disclose a material fact, its breach of fiduciary duties after it signed the FCPA, which amounts to fraudulent concealment in Michigan. (Dkt. 119 at 19–21 (citing Mich. Comp. Laws § 600.5855).) But this argument is subsumed by the Court's earlier analysis; plaintiffs already knew of the breach, and Michigan courts do not permit tolling under § 600.5855 once the party knows of a cause of action. *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 643 (2004) ("If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know . . . ." (quoting *Weast v. Duffie*, 272 Mich. 534, 539 (1935)).

Plaintiffs also argue that they had no reason to suspect defendant of a breach after the FCPA was signed because the FCPA was a specific representation that defendant would no longer squander plan assets (*id.* at 21), but this argument also fails. Again, plaintiffs already knew of the breach, and so the rule against fraudulent concealment of a claim does not apply. Yet even if the rule did apply, plaintiffs must plead that defendant intended to prevent the discovery of the claim. *Roman Catholic Archbishop*, 264 Mich. App. at 642–43 (quoting *Witherspooon v. Guilford*, 203 Mich. App. 240, 248 (1982)). Although plaintiffs are correct that they need not plead an affirmative misrepresentation because fiduciaries have an affirmative duty to disclose, there is no indication that this exception somehow removes the deceptive intent element of an affirmative misrepresentation.[10] *See Lumber Vill., Inc. v. Siegler*, 135 Mich. App. 685, 694–95 (1984) (citing cases). Plaintiff pleads no such facts with particularity.

---

[10] Plaintiffs' counterarguments are similar to an equitable estoppel argument, which tolls the running of the statute of limitations, not its commencement as fraudulent concealment does. *See West Am. Ins. Co. v. Meridian Mutual Ins. Co.*, 230 Mich. App. 305, 309–10 (1998). But equitable estoppel also requires plaintiffs to plead that defendant entered the FCPA with some deceitful intent, *id.* at 310 (citing *Guise v. Robinson*, 219 Mich. App. 139, 144 (1996)), and so plaintiffs' complaint would likewise fail on these grounds.

In 2009, it appears that plaintiffs chose not to pursue legal action for defendant's breach of fiduciary duty, and instead gave defendant the benefit of the doubt and let it attempt to cure its deficient conduct. Shrewdly, plaintiffs entered into the FCPA and imposed more specific requirements upon the relationship to see if matters improved. And now, when it alleges that defendant failed to live up to the spirit of the parties' relationship, it will be able to pursue contractual relief. However, it will not be able to turn back the clock on the breach of fiduciary duty claim that it knew of in 2009. For these reasons, plaintiffs fail to state a claim for a breach of common law fiduciary duty.

## IV.   Conclusion

For the reasons set forth above, plaintiffs state a timely claim for relief on their HCFCA claim but not their common law breach of fiduciary duty claim. The HCFCA claim will continue with plaintiff's state law breach of contract claim against defendant based on the FCPA. (Dkt. 99 at 25.)

Accordingly, defendant's motion to dismiss (Dkt. 117) is **GRANTED IN PART** as to the HCFCA claim and **DENIED IN PART**

as to the common law breach of fiduciary duty claim.

IT IS SO ORDERED.

Dated: May 20, 2019           s/Judith E. Levy
      Ann Arbor, Michigan         JUDITH E. LEVY
                                      United States District Judge