UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE GRAND TRAVERSE BAND OF
OTTAWA AND CHIPPEWA
INDIANS AND ITS EMPLOYEE
WELFARE PLAN,

  Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

  Defendant/Third-Party Plaintiff

v.

MUNSON MEDICAL CENTER,

Third-Party Defendant.

Case No. 14-cv-11349

Honorable Judith E. Levy

Magistrate Judge Curtis Ivy, Jr.

---

### PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS WITHELD UNDER PURPORTED ATTORNEY-CLIENT PRIVILEGE

For the reasons stated in the accompanying brief, Plaintiffs respectfully request an order compelling Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), pursuant to Federal Rule of Civil Procedure 37(a)(1), to produce without redactions all documents withheld under an improper assertion of attorney-client privilege. In the alternative, Plaintiffs request this Court to conduct an *in camera* review of withheld records selected by counsel for Plaintiffs to determine

whether BCBSM has improperly asserted the attorney-client privilege and thereby waived any privilege.

Pursuant to E.D. Mich. LR 7.1(a), Plaintiffs' counsel certifies that he has attempted to reach resolution on the issues raised in this motion with counsel for Defendant on multiple occasions through phone conferences, e-mail correspondence, and a video conference with the Court. Despite multiple efforts to reach a resolution, as of filing this motion, Defendant has not concurred in the relief sought. Consequently, Plaintiffs respectfully requests that this Court grant their Motion.

VARNUM LLP
Counsel for Plaintiffs

Dated: May 5, 2021

By: _/s/ Herman D. Hofman_
Perrin Rynders (P38221)
Herman D. Hofman (P81297)
Business Address and Telephone:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
hdhofman@varnumlaw.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE GRAND TRAVERSE BAND OF   Case No. 14-cv-11349
OTTAWA AND CHIPPEWA
INDIANS, and its EMPLOYEE         Honorable Judith E. Levy
WELFARE PLAN,
                                 Magistrate Judge Curtis Ivy, Jr.
        Plaintiffs,

v.


BLUE CROSS AND BLUE SHIELD
OF MICHIGAN,

        Defendant/Third-Party Plaintiff,

v.


MUNSON MEDICAL CENTER,

        Third-Party Defendant.

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS WITHELD UNDER PURPORTED ATTORNEY-CLIENT PRIVILEGE

VARNUM LLP
*Counsel for Plaintiffs*
Perrin Rynders (P38221)
Herman D. Hofman (P81297)
Business Address and Telephone:
    Bridgewater Place, P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    prynders@varnumlaw.com
    hdhofman@varnumlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUE PRESENTED ............................................................. v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... vi

I.    INTRODUCTION ......................................................................................... 1

II.   BACKGROUND ........................................................................................... 2

      A.   Federal Regulations Were Promulgated to Ensure Savings for
           Tribal Healthcare Plans. ................................................................... 2

      B.   Plaintiffs' Efforts To Access MLR Were Thwarted By BCBSM. ........ 3

      C.   BCBSM Lied to Plaintiffs About the Significance of MLR. ............... 3

      D.   Plaintiffs Discovered BCBSM's Deception. ...................................... 4

      E.   Plaintiffs Requested Discovery on BCBSM's Systematic and
           Coordinated Effort to Deprive GTB of MLR Discounts, in
           Violation of the HFCA. .................................................................... 4

      F.   Plaintiffs Repeatedly Requested Narrower Privilege Claims and
           a Clearer Privilege Log. ................................................................... 5

      G.   BCBSM's Prior Productions and Witness Admissions Show That
           It Has Abused the Attorney-Client Privilege. .................................... 7

III.  ARGUMENT ............................................................................................... 12

      A.   Michigan Privilege Law Applies ....................................................... 12

      B.   BCBSM Has the Burden of Proving That All Elements of the
           Privilege are Satisfied on a Document-By-Document Basis. ............. 13

      C.   The Attorney-Client Privilege Does Not Apply to E-mails
           Among Non-Attorney Employees ...................................................... 14

      D.   Including Mr. Case on Non-Attorney Communications Does Not
           Make Them Privileged. ..................................................................... 17

E.      BCBSM E-mails Involving Its "Legal Department" are not Privileged.......................................................................................19

IV.   CONCLUSION..................................................................................23

CERTIFICATE OF SERVICE ...........................................................................24

ii

# TABLE OF AUTHORITIES

## Cases

*Amway Corp. v. P & G Co.*, No. 1:98–CV–726, 2001 WL 1818698  (W.D. Mich. Apr. 3, 2001) ...................................................................... 19

*Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113 (E.D. Mich. 2019) ...................................................................................................... 21

*EEOC v. BDO USA, LLP*, 876 F.3d 690 (5th Cir. 2017)...................................... 19

*Estate of Nash by Nash v. City of Grand Haven*, 909 N.W.2d 862 (Mich. Ct. App. 2017) ...................................................................................... 12

*F.T.C. v. Shaffner*, 626 F.2d 32 (7th Cir. 1980)..................................................... 13

*Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653 (E.D. Mich. 1995) ...................... 19

*Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 528 N.W.2d 778 (1995)..................................................................................... 14

*Gulf Grp. Gen. Enters. Co. v. United States*,. 98 Fed. Cl. 647 (2011) ............ 21, 22

*In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003).................................................. 16

*In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447 (6th Cir. 1983).... 13, 14

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998).................................................... 13

*In re Processed Egg Products Antitrust Litigation*, 278 F.R.D. 112 (E.D. Pa. 2011) .................................................................................. 17

*In re Seroquel Prods. Liability Litig.*, 2008 WL 1995058 (M.D. Fla. May 7, 2008) ............................................................................................ 22

*Int'l Union v. Hydro Auto. Structures N. Am., Inc.*, No. 1:11-CV-28, 2014 WL 12744192 (W.D. Mich. Jan. 24, 2014)........................................... 17, 18

*Krug v. Ingham Cty. Sheriff's Office*, 264 Mich. App. 475, 691 N.W.2d 50 (2004)................................................................................. 14, 15, 18

*Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018 (E.D. Mich. July 5, 2006) ................................................................ 21

*Nash Estate v. Grand Haven*, 321 Mich. App. 587, 909 N.W.2d 862 (2017)....... 13

*Owens v. Stifel, Nicolaus & Co.*, No 7:12-CV-144 HL, 2013 WL 6389035 (M.D. Ga. Dec 6, 2013) ................................................................................. 17

*Tardiff v. County of Knox*, 246 F.R.D. 66 (D. Me. 2007)...................................... 17

*U.S. v. Walker*, 243 Fed. App'x 621 (2d Cir. 2007).............................................. 16

*United States ex rel Barko v. Halliburton Co.*, 74 F. Supp. 3d 183 (D.D.C. 2014) .................................................................................................................. 17

*United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996).............................................. 13

*United States v. Dakota*, 197 F.3d 821 (6th Cir. 1999) ........................................ 13

*United States v. Nixon*, 418 U.S. 683 (1974) .......................................................... 2

*Upjohn Co. v. United States*, 449 U.S. 383  (1981)................................................ 12

*US ex rel. Smart v. Christus Health*, No. C-05-2872009, WL 1658008 (S.D. Tex. 2009)........................................................................................................... 20

## Other Authorities

24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.) ................................................ 15, 16

## Rules

FED. R. EVID. 501 ................................................................................................ 12

## STATEMENT OF ISSUE PRESENTED

I.    Whether Blue Cross Blue Shield of Michigan's claim of attorney-client privilege based on mere discussion of federal regulations among its employees and the occasional presence of management personnel who sometimes acted in a legal capacity can block Plaintiffs' access to material evidence for the prosecution of false claims charges against BCBSM, particularly where the discussions at issue occurred in furtherance of the violations of Michigan's Healthcare False Claims Act.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. For the proposition that state law governs privilege regarding a claim or defense for which state law supplies the rule of decision:  Fed. R. Evid. 501.

2. For the proposition that the burden of establishing the existence of the privilege rests with the person asserting it:  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

3. For the proposition that a party cannot rely on blanket or conclusory assertions of privilege:  *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 454 (6th Cir. 1983).

4. For the proposition that the scope of the attorney-client privilege is narrow and attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice:  *Nash Estate v. Grand Haven*, 321 Mich. App. 587, 593; 909 N.W.2d 862 (2017).

5. For the proposition that the protection of the privilege extends only to communications, and not to facts:  *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 451; 528 N.W.2d 778, 781 (1995); 24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.).

6. For the proposition that communications within a company with an attorney are not privileged if the attorney was acting as a business advisor:  *EEOC v. BDO USA, LLP*, 876 F.3d 690, 696 (5th Cir. 2017); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 669 (E.D. Mich. 1995).

vi

## I.      **<u>INTRODUCTION</u>**

The attorney-client privilege exists to protect communications between attorneys and clients for the purpose of providing or obtaining legal advice. Defendant Blue Cross Blue Shield of Michigan ("BCBSM") has abused the privilege.  Seemingly every internal communication that so much as mentions federal Medicare-Like Rate ("MLR") regulations has been withheld entirely or substantially redacted with nothing more than conclusory assertions that the privilege applies.  BCBSM withheld or redacted more than one hundred e-mails and documents that were neither created, sent, nor received by an attorney.  When presented with redacted e-mails during their depositions, BCBSM non-attorney witnesses testified they had no recollection of ever seeking or obtaining legal advice through the e-mails.  BCBSM's overbroad and inconsistent redactions demonstrably establish that it has concealed information that is not privileged.

BCBSM has repeatedly refused to reconsider its privilege claims.  Its abuse of the attorney-client privilege means it should be ordered to produce, without redactions, all documents it has withheld or redacted.  Alternatively, because BCBSM must justify its privilege claims, and because Plaintiffs are limited in how they can attack those claims when the information at issue has been withheld or redacted, this Court should conduct an *in camera* review.  Plaintiffs submit this Court could start by reviewing a sampling of e-mails, chosen by Plaintiffs, to

1

determine the frequency of BCBSM's unwarranted privilege assertions.  A modest sampling may be enough to conclude that BCBSM has abused the attorney-client privilege.  Additional *in camera* review can proceed as this Court deems appropriate. Privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth."  *See United States v. Nixon*, 418 U.S. 683, 709-10 (1974).  Plaintiffs are entitled to all non-privileged information, and where BCBSM has not asserted the attorney-client privilege in good faith, it should be deemed to have waived the privilege altogether.

## II.   <u>BACKGROUND</u>

Plaintiffs filed this lawsuit to remedy BCBSM's systematic and coordinated effort to divert healthcare plan assets to its own coffers. *See* Pls.' Am. Compl., (ECF No. 90).  Plaintiffs maintain a self-funded employee welfare plan (the "Plan") to pay healthcare costs for Plan participants and dependents.  *Id.* at PageID#2538. Beginning in 2000, Plaintiffs contracted with BCBSM to administer the Tribe's self-insured plan.  *Id.* at PageID#2539.

### A.   <u>FEDERAL REGULATIONS WERE PROMULGATED TO ENSURE SAVINGS FOR TRIBAL HEALTHCARE PLANS.</u>

In July 2007, new federal regulations gave tribes standing in the shoes of the Indian Health Service (i.e., providing healthcare to their members) the right to pay the lower of a Medicare-Like Rate ("MLR") or contractually-negotiated network rates for hospital services provided to qualified tribal members. *Id.* at PageID#2540.

BCBSM knew MLR was almost always significantly lower than contractual discounts negotiated with hospitals.  *Id.* at PageID#2540.

### B.   PLAINTIFFS' EFFORTS TO ACCESS MLR WERE THWARTED BY BCBSM.

Soon after the MLR regulations went into effect, Plaintiffs asked BCBSM to apply MLR pricing to eligible Tribal member's' hospital claims.  *Id.* at PageID#2551. Instead of complying with its legal obligations under federal law and its fiduciary duties to the Tribe, BCBSM mounted a coordinated and systematic effort to delay and obfuscate.  *Id.* at PageID#2540-42, 2547, 2552.  BCBSM's motive was to preserve its lucrative pricing arrangements with providers.  It squandered Tribal resources to further its own interests, all the while pretending to work on ensuring Plaintiffs received MLR pricing.  *See id.*

### C.   BCBSM LIED TO PLAINTIFFS ABOUT THE SIGNIFICANCE OF MLR.

Despite BCBSM's best (or worst) efforts, Plaintiffs kept trying to secure MLR pricing to preserve plan assets.  Plaintiffs pushed BCBSM to honor its fiduciary duties. *See id.*  Eventually, BCBSM lured Plaintiffs into a deal supposedly ensuring hospital claims priced "close to" MLR.  *Id.* at PageID#2544, 2552.  The result was the Facility Claims Processing Agreement that gives rise to part of this litigation.  *Id.* at PageID#2543-44, 2552.

The Facility Claims Processing Agreement, signed in 2009, promised Plaintiffs a discount beyond BCBSM's normal discount, and for 2009 that additional

3

discount was 8% of hospital claims.  *See id.*  In later years, that additional discount was to be adjusted to keep the overall discount "close to" MLR pricing.  *See id.* BCBSM never adjusted the discount in future years; in fact, it never provided any additional discounts after 2009.

### D.     PLAINTIFFS DISCOVERED BCBSM'S DECEPTION.

In late 2012, Plaintiffs were approached by Forest County Potawatomi Insurance (another tribal business entity) about its ability to provide MLR pricing on its hospital claims for eligible Tribal members.  *Id.* at PageID#2552-53.  Plaintiffs requested a pricing comparison of ten hospital claims processed by BCBSM.  *Id.* at PageID#2552-54.  The sampling demonstrated that MLR yielded discounts several times larger than the 8% discount BCBSM represented was "close to" MLR. Plaintiffs fired BCBSM, switched its third-party administration relationship to Forest County Potawatomi Insurance, and filed this lawsuit in part under the Michigan Healthcare False Claims Act.  *Id.* at PageID#2554.

### E.     PLAINTIFFS REQUESTED DISCOVERY ON BCBSM'S SYSTEMATIC AND COORDINATED EFFORT TO DEPRIVE GTB OF MLR DISCOUNTS, IN VIOLATION OF THE HFCA.

The foregoing, merely a brief summary, means BCBSM presented false (overpriced) claims to the Tribe for payment, deceptively forcing the Tribe to pay more than necessary under federal law.  BCBSM's violation of the Healthcare False Claims Act was a systematic and coordinated effort among numerous employees

4

manifested across numerous internal records. Accordingly, Plaintiffs requested all internal communications among BCBSM employees related to: (1) Medicare-Like Rates ("MLR"); (2) BCBSM's presentment of false claims to the Tribe; and (3) BCBSM's knowledge of the true differential between its network rates and MLR.

BCBSM produced certain e-mails and attachments, but it improperly withheld many by asserting the attorney-client privilege. To-date, BCBSM has withheld or redacted 243 e-mails or attached records. As recorded by BCBSM in its privilege log, over a hundred of these e-mails and attachments do not include anyone acting in any legal capacity. Fourteen merely copy BCBSM's management personnel who might have *sometimes* acted in a legal capacity, although BCBSM fails to establish that to be the case. And in around eighty e-mails or records, one of the senders or receivers is a BCBSM manager with prior legal training, although there is no indication they are communications between an attorney and a client for the purpose of providing or obtaining legal advice. BCBSM's redactions are so expansive that they hide nearly everything from which the propriety of its dubious attorney-client privilege assertions can be evaluated. And BCBSM has produced a privilege log so full of conclusory statements as to be meaningless.

F.    **PLAINTIFFS REPEATEDLY REQUESTED NARROWER PRIVILEGE CLAIMS AND A CLEARER PRIVILEGE LOG.**

Counsel for Plaintiffs continuously followed-up with counsel for BCBSM regarding concerns about BCBSM's secretive withholding of material internal

communications and records among key BCBMS employees.  BCBSM was asked to reconsider its decision to withhold vast swaths of e-mails and redact paragraphs of information.  Plaintiffs also requested that BCBSM produce an updated privilege log with enough detail to support BCBSM's expansive privilege claims.  As one example, counsel for Plaintiffs' provided the following non-exclusive list of examples of errant privilege designations and inadequate privilege log explanations:

1.    BCBSM-GTB-009762:
    a. The redaction in the middle of the page concerns something discussed with my client. There is no basis to assert a privilege as something communicated to someone outside of BCBSM.
    b. The redactions in the first paragraph of the e-mail at the top of the page cannot be privileged because it is specifically noted that BCBSM's in-house attorney is not involved in the communication. He is neither being ask for, nor giving, legal advice.
    c. The redaction in the second paragraph of the e-mail at the top of the page is about something my client purportedly communicated, which is not privileged.
2.    BCBSM-GTB-12065
    a. This e-mail exchange is between business people. No request for legal advice is made, and none is given.
    b. The exchange concerns the content of a third-party transmission. **Exhibit A**, 12/26/2020 Correspondence.

Responding on December 28, 2020, BCBSM argued for a wildly expansive scope of attorney-client privilege, offered some additional explanation for its decision to hide key e-mails from Plaintiffs, and agreed to provide an updated privilege log by January 8, 2021.  *See id.*

6

The very next day, however, counsel for BCBSM reiterated that they did not believe that any of their privilege claims were inappropriate, and that, although they would review their privilege designations, they maintained an expansive interpretation of attorney-client privilege that basically ensured nothing further would be produced.  BCBSM's most recent privilege log is attached as **Exhibit B**. BCBSM's privilege log is riddled with conclusory assertions and self-contradictory statements.  For example, as to an e-mail BCBSM withheld entirely, its privilege log states that it only "[n]eeds redacting." *Id.* at p. 12, 04/08/2009 E-mail.  As to another e-mail BCBSM withheld entirely, its privilege log states only that it is "[p]otentially privileged." *Id.* at p. 10, 03/03/2008 E-mail.  Plaintiffs' document-by-document analysis showing why BCBSM's conclusory and inconsistent privilege assertions are improper is set forth in the spreadsheet attached as **Exhibit C**.

G.     **BCBSM'S PRIOR PRODUCTIONS AND WITNESS ADMISSIONS SHOW THAT IT HAS ABUSED THE ATTORNEY-CLIENT PRIVILEGE.**

BCBSM's prior productions demonstrably prove that it has abused the attorney-client privilege.  In 2016, BCBSM produced a series of key internal documents and communications between its employees in this case.  However, in a subsequent production in 2020, for whatever reason, BCBSM produced the same e-mails with vastly more extensive redactions.  For example, BCBSM provided the following e-mail in 2020 (on the left below) (**Exhibit D**), and previously in 2016 (on the right below) (**Exhibit E**):

7



Specifically, in the 2016 production, BCBSM did not redact from this e-mail BCBSM Account Manager Frank Smith's statement that: "Kelley and Jeff, I'm not sure if you've heard about this legislation regarding an apparent mandate for carriers to pay at Medicare levels for tribal members…fyi at this point."  Yet in the current production, BCBSM has redacted Mr. Smith's <u>entire e-mail</u> as privileged.  This communication is clearly not privileged and should never have been redacted. BCBSM's attempt to hide this sentence demonstrates an improper abuse of attorney-client privilege, and begs the question of what its many other privilege assertions are improperly hiding.

The above is not an isolated example.  An additional instance of BCBSM asserting the attorney-client privilege without justification is demonstrated below in a key e-mail from BCBSM's Account Manager Dan Deiss to Gerald Noxon, with

the 2020 version (**Exhibit F**) shown on the left and the 2016 version (**Exhibit G**) on

the right below:



The following statement by non-attorney Dan Deiss was redacted as

privileged from the e-mail in the 2020 production: "There would need to be a defined

process for settling claims payments to each hospital and a process for agreeing to

the applied BCBSM/Medicare differential including a maintenance schedule to keep

the differential current."  This statement is not privileged.  BCBSM's attempt to hide

this information casts its other privilege assertions into question.

BCBSM's abuse of the privilege is further evidenced by admissions obtained

from BCBSM's own witnesses during depositions.  BCBSM non-attorney Dan Deiss

testified that he had no recollection of ever asking the non-attorney sender and

recipients of a redacted October 5, 2007 e-mail (attached as **Exhibit H**) for legal

advice:

> **Q.**   **Do you have a recollection of either asking Ms. Monterusso, Mr. Connolly, or Mr. Smith any questions seeking legal advice –**
>
> *   *   *   *
>
> **Q.**   **-- during the 2007 time frame?**
>
> *   *   *   *
>
> **A.**   No.
> **Q.**   **Do you remember any of those three asking you for any legal advice?**
> **A.**   No.

**Exhibit I**, Deiss Dep., at 42:10-44:10.  Mr. Deiss testified similarly about the redacted October 8, 2007 e-mail string attached as **Exhibit J**, stating "I can't say" and "I have no clues" when asked if he was "asking for or giving legal advice" in this e-mail.  **Ex. I**, Deiss Dep., at 44-46.  Finally, when asked about BCBSM's extensive redactions to a November 19, 2012 e-mail (attached as **Exhibit K**), discussing opinions BCBSM shared with GTB, counsel for BCBSM instructed Mr. Deiss not to answer the question asking him "what opinion you shared with [GTB attorney] John Petoskey." *Id.* at 47-49.  BCBSM non-attorney witness Doug Darland testified similarly about the redacted e-mail strings attached as **Exhibit L** and **Exhibit M**, stating that he never asked for legal advice or obtained legal advice from Mr. Deiss, the other sender and recipient on those email strings.  **Exhibit N**, Darland Dep., at 22-23.  Despite this, counsel for BCBSM redacted the entire contents of e-mails in the string.  *See* **Exs. L, M**.

10

The e-mails and records BCBSM concealed from Plaintiffs are key to this case.   In one e-mail, counsel for BCBSM redacted the sentence immediately following BCBSM's admission that the "IHS (Indian Health Service) rule . . . entitles [GTB's] contract health enrollees (our group 01020) to medicare rates at the hospital."   **Exhibit O**, 8/16/2007 Correspondence.   Obviously, information following BCBSM's admission directly contradicting its position in this lawsuit is highly relevant and material to Plaintiffs' claims.   As another example, counsel for BCBSM redacted numerous e-mails preceding three e-mails where BCBSM's top tier management question "who will be responsible" for paying GTB the FCPA discounts, assert this should be "an internal matter that wouldn't go in the contract" with GTB, and then, in the same discussion about the FCPA discount (which BCBSM lied to GTB about and never provided), point to a BCBS employee named "Kim" who they say "does the dirty work when no one else will or can."   **Exhibit P**, 5/13/2008 – 5/29/2008 Correspondence.   BCBSM management's discussions about intentionally omitting terms from the FCPA regarding BCBSM's obligation to pay GTB discounts and about doing "dirty work when no else will or can" in the context of discount payments to GTB are highly material to Plaintiffs' claims.

The parties have met and conferred on multiple occasions about BCBSM's Privilege Log and attended a conference with the Court on April 20 to discuss this

11

matter, among others.  The Court ordered Plaintiffs to file this motion as a result (ECF No. 144, PageID.3514).

## III.  ARGUMENT

BCBSM is withholding at least 283 e-mails or attachments that evidence BCBSM's wrongful conduct, as alleged in Plaintiffs' Amended Complaint (ECF No. 90).  These records are responsive to Plaintiffs' requests for discovery and are almost all non-privileged business records.  A significant number of these emails were sent and received by BCBSM's non-attorney employees in the regular course of business. Fundamental to the issues at hand is the well-established holding that facts are not privileged.  *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("[T]he protection of the privilege extends only to *communications* and not to facts . . . ."). BCBSM has improperly redacted numerous reports of facts under the mistaken belief that those facts are privileged.  They are not, as set forth below.

### A.  MICHIGAN PRIVILEGE LAW APPLIES.

Under Federal Rule of Evidence 501, Michigan state privilege law applies here.  That Rule provides that: "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  FED. R. EVID. 501.  Here, the Court is exercising supplemental jurisdiction over common law contract claim and a Michigan Health Care False Claims Act claim.  Accordingly, Michigan state law on privilege applies.  Michigan courts look to federal courts for

guidance regarding attorney-client privilege.  *Estate of Nash by Nash v. City of Grand Haven*, 909 N.W.2d 862, 867 (Mich. Ct. App. 2017).

### B.   BCBSM HAS THE BURDEN OF PROVING THAT ALL ELEMENTS OF THE PRIVILEGE ARE SATISFIED ON A DOCUMENT-BY-DOCUMENT BASIS.

"The burden of establishing the existence of the privilege rests with the person asserting it."  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  The party asserting privilege cannot merely rely on a blanket or conclusory assertion of privilege.  *See In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 454 (6th Cir. 1983) ("blanket assertion[s]" that a party is seeking legal advice are "strongly disfavored"); *see also United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it is the conclusion.").  Instead, "the proponent must conclusively prove each element of the privilege."  *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998).

In Michigan, "[t]he attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice."  *Nash Estate v. Grand Haven*, 321 Mich. App. 587, 593, 909 N.W.2d 862 (2017) (quotation marks and citation omitted).  "The scope of the privilege is narrow: it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice."  *Id.* (quotation marks and citation omitted) (emphasis added).  "The limitation surrounding any information sought must be determined for each document separately considered on

13

a case-by-case basis." *F.T.C. v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980) (emphasis added).   Because this privilege reduces the amount of information discoverable during a lawsuit, "it is to be narrowly construed." *In re Grand Jury Investigation*, 723 F.2d at 451.

BCBSM has not met its high burden of showing that the elements of privilege are satisfied on a document-by-document basis.   As but one example, BCBSM uses some variation of the conclusory statement "Email reflecting confidential attorney-client communications with BCBSM Legal Department regarding MLR issues" over one hundred times in its privilege log as the sole basis for withholding and redacting numerous e-mails and attached records.   *See* **Ex. B**, BCBSM's Privilege Log. BCBSM's conclusory statement is inadequate to satisfy its high burden of establishing, on a document-by-document basis, that it is entitled to hide key information from Plaintiffs.   *In re Grand Jury Investigation*, 723 F.2d at 454-55. BCBSM's log fails to support its privilege claims.

C.   **THE ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY TO E-MAILS AMONG NON-ATTORNEY EMPLOYEES.**

"The scope of the privilege is narrow; it applies "only to confidential communications by the client to his attorney, which are made for the purpose of obtaining legal advice." *Krug v. Ingham Cty. Sheriff's Office*, 264 Mich. App. 475, 484-85; 691 N.W.2d 50 (2004) (cleaned up) (emphasis added).   Moreover, "the protection of the privilege extends only to communications, and not to facts."

14

*Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 451, 528 N.W.2d 778, 781 (1995) (citation omitted).  Accordingly, a party "may not refuse to disclose any relevant fact within its knowledge merely because it incorporated a statement of that fact into its communication to the attorney."  *Id.*; *see also* § 5484 "Confidential Communication", 24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.) ("The most important point to be conveyed by the definition of 'communication' is that the privilege only applies to communications, not to their informational content.").

BCBSM has improperly claimed that all or part of over one hundred e-mails among non-attorney employees are shielded from disclosure by the attorney-client privilege.  **Ex. B**, BCBSM's Privilege Log.  A comprehensive list of BCBSM's employees named on the e-mails and records, together with their titles, is attached as **Exhibit Q**.  In multiple instances, BCBSM's sole justification for withholding these e-mails is the conclusory assertion:  "Redacted portion reflecting confidential attorney client opinions of BCBSM Legal Department regarding MLR issues."  *See* **Ex. B**, BCBSM's Privilege Log.  That comes nowhere near the threshold required for BCBSM to meet its burden of establishing privilege for e-mail communications between non-attorneys.  It fails to establish that the withheld records and redactions cover any of the required elements:  (1) a communication, not facts; (2) by a client to his attorney, as opposed to non-attorney employees; (3) for the purpose of obtaining or receiving legal advice, in contrast to business matters.  *Krug*, 691

15

N.W.2d at 56.   Accordingly, as to the non-attorney e-mails and attachments, BCBSM has failed to even come close to meeting its high burden of proof with respect to <u>any</u> element of the attorney-client privilege.  *See id.*

The spreadsheet attached as **Exhibit C** shows why BCBSM's conclusory assertions of privilege are wholly insufficient—on a document-by-document basis. And even if some portions of these e-mails between non-attorney employees repeat <u>prior</u> communications by or to a BCBSM management employee who may have sometimes occupied an attorney role, that does not make those emails privileged. First, in house attorneys fulfill legal and business functions, and in the latter case cannot shield their communications as privileged.  The main sender/recipient at issue (Mathew Case) predominantly served in non-legal roles and positions within BCBSM during the relevant time period; any advice or counsel given in those roles is not privileged.  *See infra* Subsection III.E.  Second, funneling communications through an attorney does not make them privileged.  *See U.S. v. Walker*, 243 Fed. App'x 621, 623 (2d Cir. 2007) (printing out and delivering business records to attorney does not make them privileged); *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003) (sending copies of communications to corporate lawyer does not suffice to make them privileged); *see also* § 5484 "Confidential Communication", 24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.) ("There is, however, no justification for permitting corporations, or other clients, to funnel routine documents through

16

corporate counsel and thus make them privileged."). Third, any <u>facts</u> conveyed to or by Mr. Case are <u>not privileged</u> and should therefore never have been withheld. *In re Processed Egg Products Antitrust Litigation*, 278 F.R.D. 112, 115 (E.D. Pa. 2011) (attorney-client privilege only privileges communications, not the facts communicated); *Tardiff v. County of Knox*, 246 F.R.D. 66, 80 (D. Me. 2007) (information not protected by privilege merely because it was discussed with counsel). Fourth, assuming portions of some communications and records at issue are privileged, BCBSM's conclusory refrains in its privilege log—together with its vastly overbroad redactions—fails to meet its burden of showing the records are privileged. Plaintiffs' motion must be granted accordingly.

### D. INCLUDING MR. CASE ON NON-ATTORNEY COMMUNICATIONS DOES NOT MAKE THEM PRIVILEGED.

BCBSM employees' habit of copying Mr. Case on e-mails or other records does not make those records privileged. If not made for the purpose of giving or receiving legal advice, the mere fact that someone with prior legal training is copied on an email does not afford attorney-client privilege protection. *See, e.g., Int'l Union v. Hydro Auto. Structures N. Am., Inc.*, No. 1:11-CV-28, 2014 WL 12744192, at *1 (W.D. Mich. Jan. 24, 2014); *United States ex rel Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 (D.D.C. 2014). Non-privileged information does not become privileged merely because someone with prior legal training is copied on an email. *Owens v. Stifel, Nicolaus & Co.*, No 7:12-CV-144 HL, 2013 WL 6389035, at *2

17

(M.D. Ga. Dec 6, 2013) ("While Stifel's in-house counsel was copied on the email, information that is not otherwise privileged will not become so simply by being communicated to or filtered through an attorney.").  Instead, only communications between an attorney and his or her client for the specific purpose of giving or receiving legal advice are protected from disclosure by that privilege.  *Int'l Union*, No. 1:11-CV-28, 2014 WL 12744192, at *1.

BCBSM claims at least fourteen e-mails are privileged merely because Mr. Case received a copy.  As support for its wholesale withholding of these e-mails and attachments, BCBSM repeatedly offers only this conclusory description:  "Email reflecting confidential attorney-client communications with BCBSM Legal Department regarding MLR issues."  *See generally* **Ex. B**, BCBSM's Privilege Log. Again, this fails to establish that the withheld records and redactions cover any of the required elements BCBSM must prove:  (1) a communication, not facts; (2) by a client to his attorney, as opposed to non-attorney employees; (3) for the purpose of obtaining or receiving legal advice, in contrast to business matters.  *Krug*, 691 N.W.2d at 56.  BCBSM once again fails to even come close to meeting its high burden of proof with respect to any element of the attorney-client privilege.  *See id.*; *see also* **Ex. C**, Pl.'s Spreadsheet analyzing BCBSM's privilege assertions. BCBSM's records in which Mr. Case is merely copied must be produced in full to Plaintiffs, without redactions.

### E.    BCBSM E-MAILS INVOLVING ITS "LEGAL DEPARTMENT" ARE NOT PRIVILEGED.

BCBSM's practice of routing discussions about MLR regulations through management employees who have prior legal training does not shroud BCBSM's business decisions or the underlying facts and analyses in attorney-client privilege. "There is no presumption that a company's communications with counsel are privileged." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 696 (5th Cir. 2017) (citation omitted). Instead, "the privilege only applies if the lawyer is a providing legal advice or services, <u>and will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor</u>." *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 669 (E.D. Mich. 1995) (emphasis added). Because in-house counsel serve business roles in addition to legal roles, courts place "<u>a heavy burden on the proponents to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice.</u>" *Amway Corp. v. P & G Co.*, No. 1:98–CV–726, 2001 WL 1818698, at *5-6 (W.D. Mich. Apr. 3, 2001) (emphasis added).

BCBSM has withheld or otherwise redacted at least seventy-nine e-mails in which BCBSM managers and employees with some prior legal training are primary senders or receivers. BCBSM's privilege log only provides the following bare-bones, conclusory recitation to purportedly establish privilege for numerous of these records: "Email reflecting confidential attorney-client communications with

19

BCBSM Legal Department regarding MLR issues." **Ex. B**, BCBSM's Privilege Log. This cursory description does not satisfy the heightened scrutiny applicable to communications among BCBSM's sometimes-attorneys and its employees. *See US ex rel. Smart v. Christus Health*, No. C-05-2872009, WL 1658008 at \*1 (S.D. Tex. 2009) ("[T]he attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents.").

Many of the e-mails and attachments withheld or redacted by BCBSM represent communications to, from, or about Mr. Case, who BCBSM's Privilege Log treats as synonymous with "BCBSM's Legal Department." **Ex. B**, BCBSM's Privilege Log. Contrary to BCBSM's assertions, Mr. Case's LinkedIn profile demonstrates he predominantly worked in <u>non-legal</u> capacities for <u>non-legal</u> departments within BCBSM's organization during the relevant time period, including BCBSM's: (1) "Health Plan Business (Sales) Department"; (2) "Agent Administration"; (3) "Finance"; (4) "Ancillary Product Sales"; and (5) "Other Departments." **Exhibit R**, Matthew Case LinkedIn Profile (accessed 4/23/2021).

Where, as here, "a person who happens to be an attorney is not acting in that capacity, the privilege does not attach," and "[c]ommunications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege." *Michigan First Credit Union v. Cumis*

20

*Ins. Soc., Inc.*, 2006 WL 1851018, at \*2 (E.D. Mich. July 5, 2006). Describing Mr. Case as synonymous with BCBSM's "Legal Department" is insufficient for BCBSM to meet its burden in establishing the attorney-client privilege, especially given Mr. Case's many non-legal roles. *See Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019) ("If an attorney serves a non-legal function that could as well be performed by a non-lawyer, and acts in the ordinary course of business, his or her communications in that capacity would likely not be protected by the attorney-client privilege.").

For example, in *Gulf Grp. Gen. Enters. Co. v. United States*, the plaintiff was challenging an army contracting officer's final decision on contracts that the Army had terminated. 98 Fed. Cl. 647 (2011). The parties disputed whether the plaintiff could elicit testimony from a government lawyer who had served in two capacities: "one to prepare a litigation report for the Department of Justice in support of the litigation, and the other to provide facts to assist the contracting officer prepare his contracting officer's final decisions." *Id.* at 652. The plaintiff sought the lawyer's testimony because it had the potential to illuminate the Army's "apparently shifting basis" for why it had terminated the contracts, and the Government objected on attorney-client privilege grounds. *Id.* at 651. The Court of Federal Claims rejected the privilege claim, concluding that the "plaintiff properly should be able to explore" the attorney's provision of facts to the contracting officer. *Id.* at 652.

21

*Gulf Group* shares many parallels with this case.  Here, Mr. Case provided facts to BCBSM senior management and employees regarding the MLR regulations and the Facility Claims Processing Agreement, and Plaintiffs seek discovery to clarify the "apparently shifting basis" for BCBSM's decision first to attempt to comply with the MLR regulations and later to knowingly violate them.  The attorney in *Gulf Group* characterized her fact-finding role as "helping Mr. Joseph Libbey, a Contracting Officer, prepare the court directed final decisions." 98 Fed. Cl. at 650. BCBSM characterizes Mr. Case's work in a more vague and conclusory manner, repeatedly asserting he provided "opinions regarding MLR issues."  **Ex. B**, BCBSM's Privilege Log.  That does not justify a privilege claim.  *Gulf Group*, 98 Fed. Cl. at 651-52; *see also In re Seroquel Prods. Liability Litig.*, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008) ("When the business simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.").

Per Mr. Case's own LinkedIn website, he held a variety of non-legal roles within BCBSM's large organization during the time period in question.  **Ex. R**, Matthew Case LinkedIn Profile.  Moreover, Mr. Case provided a variety of non-legal advice to BCBSM's employees and senior management that obviously does not fall within the attorney-client privilege.  *See id.* (describing how he "[a]dvised Senior

Management on various issues, including corporate issues and procedures, Board matters, . . . brand matters, . . . .").

BCBSM reflexively redacted or withheld almost every single word spoken to or by Mr. Case as "attorney-client privileged." *See, e.g.*, **Exhibit S**, BCBSM Internal E-mail Strings (redacting entire contents of e-mails).  Moreover, its Privilege Log makes no attempt to distinguish the various roles Mr. Case played or the different types of advice he gave during the time period in question.  **Ex. B**, BCBSM's Privilege Log.  And BCBSM has withheld or heavily redacted all responsive communications and facts that so much as have Mr. Case's name on them based on nothing more than the conclusory assertion he is an attorney and has "legal opinions" about the MLR regulations.  *See id.*  Because Mr. Case acted in non-legal roles and provided non-legal advice during the relevant time period, BCBSM's privilege claims for records naming BCBSM employees and Mr. Case (or others with prior legal training) are suspect.  BCBSM has failed to establish that the withheld records are privileged, and it should be ordered to produce them all in full.

## IV.   CONCLUSION

The search for the truth is not a game which BCBSM may lightly play with conclusory statements and obfuscations in a privilege log and redaction process that clearly violates the tenets of attorney-client privilege.  Plaintiffs respectfully seek an

23

Order granting their Motion to Compel and directing BCBSM to produce all withheld and redacted documents for *in-camera* review immediately.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiffs

Dated:  May 5, 2021                    By:   *Herman D. Hofman*

Perrin Rynders (38221)
Herman D. Hofman (P81297)
Business Address and Telephone:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
hdhofman@varnumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2021, the foregoing pleading was filed electronically with the Clerk of the Court to be served by operation of the Court's Electronic Filing System to all counsel of record.

*/s/ Herman D. Hofman*
Herman D. Hofman (P81297)
VARNUM

17937437.1

24