UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA INDIANS and ITS EMPLOYEE WELFARE PLANE,<br>        Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>MUNSON MEDICAL CENTER,<br>    Third-Party Defendant.<br>_____/ | Case No.: 14-11349<br><br>Judith E. Levy<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

## ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL (ECF No. 145)

### I. Background

The Grand Traverse Band of Ottawa and Chippewa Indians is a federally recognized Indian tribe. The tribe and its employee welfare plan (collectively "Plaintiffs") brought this action against Blue Cross Blue Shield of Michigan ("BCBSM") and Munson Medical Center alleging violations of ERISA and Michigan's Healthcare False Claims Act. Plaintiffs contracted with BCBSM to

provide health insurance to its members. The parties allegedly agreed that Plaintiffs would pay "Medicare-Like Rates," or "MLR," for healthcare. Plaintiffs, however, allege BCBSM fraudulently caused them to pay a rate higher than the agreed upon MLR. The ERISA claims have since been dismissed. (ECF Nos. 90, 122).

To support their Michigan Healthcare False Claims Act claim, Plaintiffs sought internal communications between BCBSM employees related to MLR, BCBSM's presentment of allegedly false claims to plaintiffs, and BCBSM's knowledge of the differential between its network rates and MLR. (ECF No. 145, PageID.3531). According to Plaintiffs, BCBSM produced emails and attachments but withheld many emails or portions of emails improperly asserting attorney-client privilege. This precipitated Plaintiff's motion to compel BCBSM to produce the withheld documents (ECF No. 145), which was referred to the undersigned for hearing and determination (ECF No. 146). The undersigned held a hearing on the matter on July 8, 2021, during which counsel for the moving and opposing parties appeared and gave argument.

Plaintiffs raise arguments attacking both the sufficiency of the privilege log and the propriety of the redactions. Regarding the privilege log, Plaintiffs contend the entries contain insufficient detail to establish attorney-client privilege. A majority of the entries described the privileged material as: "Email reflecting

2

confidential attorney-client communications with BCBSM Legal Department regarding MLR issues." Plaintiffs maintain this is insufficient. (ECF No. 145, PageID.3540). Plaintiffs also argue BCBSM's redactions were overbroad, capturing communications that are not privileged. Specifically, Plaintiffs' contend BCBSM improperly redacted emails between non-attorney BCBSM employees, improperly redacted emails involving BCBSM employee Matt Case who worked as in-house counsel as well as in other roles, and improperly redacted emails containing business advice or communications, rather than legal advice. (*Id.* at PageID.3540-49). Among the exhibits attached to the motion are twelve email strings, many of them are strings of the same emails. Some emails that were produced in 2016 have some redaction for attorney-client privileged matter, but the same emails produced in 2020 have more content redacted. Plaintiffs use these examples to demonstrate their contention that BCBSM's redactions are improper and/or overbroad.

In response, BCBSM argues the only emails the court should consider on this motion are those which were attached to the motion—they assert the court cannot use a "sampling" of emails to extrapolate the propriety of the asserted privilege as to all emails withheld under the privilege. BCBSM provided those emails to the court, unredacted, for in camera review. BCBSM maintains the content of those emails speaks for themselves—they contain privileged

communications. BCBSM also contends that in the subject emails, attorney Matt Case served only in his capacity as corporate counsel providing legal advice. (ECF No. 151).

## II. Legal Standard

Michigan law governs the question of attorney-client privilege in this matter.[1] *See* Fed. R. Evid. 501 (where state law supplies the rule of decision, state law governs privilege). As noted by plaintiffs, Michigan courts look to "federal precedent for guidance in determining the scope of the attorney-client privilege when a particular issue has been addressed by a federal court." *Est. of Nash by Nash v. City of Grand Haven*, 909 N.W.2d 862, 867 (Mich. Ct. App. 2017) (citation omitted).

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, (1981) (citations omitted). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*; *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). The privilege exists to protect not only the professional advice by the lawyer but also the provision of information by the client to enable the lawyer to give sound and informed advice to the client.

---

[1] The parties agreed at the hearing that Michigan law applies.

4

*Upjohn*, 449 U.S. at 390. Under Michigan law, "[t]he scope of the [attorney-client] privilege is narrow: it attaches only to confidential communications by the client to its adviser that are made for the purpose of obtaining legal advice." *Fruehauf Trailer Corp. v. Hagelthorn*, 528 N.W.2d 778, 780 (Mich. Ct. App. 1995); *AMI Stamping LLC v. ACE Am. Ins. Co.*, 2015 WL 12990251, at *3 (E.D. Mich. Oct. 7, 2015), *order rejected in part on other grounds*, 2015 WL 7252479 (E.D. Mich. Nov. 17, 2015) ("In order to be a protected communication, it must be intended to be confidential and it must be provided to an attorney for the purpose of obtaining legal advice."). "Confidential client communications, along with opinions, conclusions, and recommendations based on those communications, are protected by the attorney-client privilege because they 'are at the core of what is covered by the privilege.'" *McCartney v. Attorney General*, 587 N.W.2d 824 (Mich. Ct. App. 1998) (citation omitted).

"In the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice." *McCall v. Procter & Gamble Co.*, 2019 WL 3997375, at *4 (S.D. Ohio Aug. 22, 2019) ( (collecting cases); *Ajose v. Interline Brands, Inc.*, 2016 WL 6893866, at *8 (M.D. Tenn. Nov. 23, 2016) (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006)) ("In the corporate context, the attorney-client privilege may extend to communications between employees that

convey legal advice given by an attorney to the corporation."); *see also Leibel v. Gen. Motors Corp.*, 646 N.W.2d 179, 183 (Mich. Ct. App. 2002) (quoting *Reed Dairy Farm v. Consumers Power Co.,* 576 N.W.2d 709 (Mich. Ct. App. 1998) ("Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication.")).

The party asserting the privilege—BCBSM—has the burden of proving each element of the claim. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The claim of privilege must be made and assessed on a document-by-document basis. *Pearlshire Capital Grp., LLC v. Zaid*, 490 F. Supp. 3d 1299, 1307 (N.D. Ill. 2020) (citing *Shaffer v. AMA*, 662 F.3d 439, 446 (7th Cir. 2011)). The information or documents submitted in support of the privilege must be sufficient to establish the privileged nature of the material sought. *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 879–80 (7th Cir.2005) (holding that a court must review all of the documents claimed as privileged and cannot rely on a "random sampling" of documents to determine privilege).

### III.  Analysis

Preliminarily, BCBSM's assertion that the only emails at issue are those attached to Plaintiffs' motion is incorrect. There is no support for the position that

the party contesting privilege must attach every redacted document in question to be considered by the Court. Plaintiffs sufficiently raised their argument the privilege log is insufficient to establish the privilege, and that the Court's review is not limited to the examples attached to their motion. The Court, however, agrees with BCBSM's position that using a "sampling" of contested redactions to extrapolate from those emails the propriety of redactions in other unrelated documents is improper and will not be done here.

  A. Sufficiency of Privilege Log

Pursuant to Federal Rule of Civil Procedure 26(b)(5), when a party withholds information otherwise discoverable on the basis the information is privileged, that party must expressly make the claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." BCBSM cites *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118 (E.D. Mich. 2019), which discussed the information that must be contained in a privilege log. The more succinct description used in *Carhartt* is as follows: "'[E]ach document in a privilege log should contain details including: date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery.'" *Id.* at 120 (quoting *Clark Const. Grp., Inc. v.*

*City of Memphis*, 2005 WL 6187896 (W.D. Tenn. Feb. 9, 2005)). In *Clark*, the privilege log was deficient because the proponent only used general categories of persons and entities without identifying anyone by name and position, and provided vague descriptions. *Id.* The required showing is not "onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting *In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 WL 137499, at *2 (6th Cir. Mar. 5, 1999)).

1. Emails to or from an attorney

With regard to emails sent by or sent to one or more attorneys, the Court finds the privilege log descriptions adequate pursuant to *Carhartt*. The log includes the date, author, all recipients of the email, the privilege designation (attorney-client privilege), email subject, and a description of the content of the email. The description for each of these emails is either "Redacted portion reflecting confidential attorney-client communications with BCBSM Legal Department regarding MLR issues" or "Email reflecting confidential attorney-client communications with BCBSM Legal Department regarding MLR issues." (ECF No. 145-3). While not a model of detailed description, the description contains information similar to the description in *Carhartt*, where the proponent of the log described the material as "Document(s) providing, containing, reflecting, or

discussing confidential legal advice from counsel concerning anticipated litigation." 333 F.R.D. at 120.  As in *Carhartt*, BCBSM has met the minimal standard of detail for a privilege log.  Indeed, the proponent of the privilege log is not required to reveal the content of the communications to prove the privileged nature of the information, and so the description is sufficient.

The vast majority of emails that fall under this category involved BCBSM senior attorney Matt Case.  Relying on Mr. Case's LinkedIn profile, Plaintiffs contend Mr. Case was likely not providing legal advice in the emails, but rather was providing business advice.  According to Plaintiffs, his LinkedIn profile lists his work at BCBSM in many non-legal departments, such as "Finance," "Agent Administration," and "Ancillary Product Sales."  (ECF No. 145, PageID.3546; ECF No. 145-19).

Plaintiffs are correct that communications between attorney and client related to business matters, rather than legal matters, are not attorney-client privileged.  *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006).  However, as stated in *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113 (E.D. Mich. 2019), "'legal and business considerations may frequently be inextricably intertwined.  This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting.  The mere fact that business

considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege.'" *Id.* at 117 (quoting *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685-86 (W.D. Mich. 1996)). The question is whether the advice is predominantly legal or business in nature. *Id.* When there are doubts, they are resolved in favor of the privilege. *Id.* (citations omitted).

The undersigned does not find Plaintiffs' argument persuasive. First, the LinkedIn profile is not conclusive evidence that Mr. Case's emails contained business advice rather than legal advice. Mr. Case described himself in his profile as a "business lawyer" and stated he "supported" BCBSM's sales department, agent administration, and finance, to name a few departments, not that he worked in finance or other areas of the business. (ECF No. 145-19, PageID.3676, 3677). Second, nothing in the privilege log supports the impression Mr. Case provided business advice. Third, the unredacted emails reviewed by the Court do not contain advice that is predominantly business advice. To the extent the legal advice in those emails contains an element of business advice, this is to be expected in the corporate context and does not change the nature of the advice, as discussed above.

The motion to compel BCBSM to produce unredacted emails in which an attorney is the sender or recipient is denied.

> 2. Emails between non-attorneys and emails in which an attorney is only copied

The Court has identified some issues in the privilege log where non-attorneys are the recipient or sender. Where communications are between clients, rather than between client and attorney, the privilege log becomes "even more important than it usually is, because it must establish, not only the subject matter covered and the purpose of the communication, but also where and how the attorney-client relationship is implicated at all." *Grae v. Corr. Corp. of Am.*, 2020 WL 3035915, at *6 (M.D. Tenn. June 5, 2020). This includes emails in which an attorney is merely copied on the email.

Many of the privilege log entries meet this standard. For example, the first entry in the log, an email between non-attorneys, describes the purportedly privileged material as follows: "Redacted portion reflecting confidential attorney-client opinions of BCBSM Legal Department regarding MLR issues. In the redacted portion of Deiss's October 14, 2011 email to Noxon, he states that he has 'spoken with Matt Case about' certain legal issues and then summarized Case's legal opinion about those issues." (ECF No. 145-3, PageID.3561). This entry, and the entries like it, sufficiently explain where and how the attorney-client relationship is implicated—Deiss relayed Case's legal opinion. The entries which include this kind of detailed information are sufficient to establish attorney-client privilege. As discussed above, the privilege attaches not only to communications directly between client and attorney, but also to communications between clients

11

for the purpose of obtaining legal advice or to relay legal advice. *See McCall*, 2019 WL 3997375, at *4.

Nevertheless, not all of the privilege log entries related to emails without an attorney meet this standard. For example, in an email dated August 22, 2008, the description states: "Redacted portion reflecting confidential attorney-client opinions of BCBSM Legal Department regarding MLR issues." (ECF No. 145-3, PageID.3561). This is repeated for quite a few emails between non-attorneys. (*See, e.g.*, emails dated January 30, 2008 and February 1, 2008, ECF No. 145-3, PageID.3562; emails dated October 11, 2012, at PageID.3568). This entry would be sufficient if an attorney sent or received the email, but it is not sufficient between non-attorneys only. The examples highlighted and cited to here are not exclusive. There are many similar entries, too many for the Court to list here. Therefore, BCBSM is **ORDERED** to review the privilege log entries for emails between non-attorneys and emails in which an attorney is merely copied and supplement the privilege log to provide more detail or produce emails containing the conclusory description. BCBSM must also review the redactions in these emails for any improper redactions capturing non-privileged communications and produce the updated redacted email to Plaintiffs. This review and supplemental production and/or supplemental privilege log must be completed within 21 days of this Order.

12

B. In Camera Review

The undersigned has identified a few improper redactions in the emails submitted for in camera review.

Four of the exhibits attached to Plaintiffs' motion were provided to demonstrate BCBSM's purportedly inconsistent and overbroad redactions. Plaintiffs' point has some merit. Exhibits E and G contain email chains produced to Plaintiffs in 2016 with some material redacted. Exhibits D are the same emails in Exhibit E but produced in 2020 with additional material redacted, and Exhibit F is the 2020 production of Exhibit G. (*See* ECF No. 145, PageID.3533-35; ECF No. 145, PageID.3601-18).

The redactions in the 2020 production found in Exhibit D are too broad—for example, BCBSM redacted the entire email from Mr. Deiss dated October 8, 2007. Notwithstanding, two of the four sentences in that particular communication are not privileged. The material which is not privileged was not redacted in the 2016 production. Exhibit E contains the proper redactions. As Plaintiff's possess the emails in Exhibit E, BCBSM need not produce the email chain again.

In Exhibit F, one additional sentence is redacted compared to the 2016 production. In this instance, the redaction is proper—the additional sentence is (at least arguably) an explanation of attorney Mr. Case's advice regarding adding language to the "PHAs."

There are two redactions in Exhibit L which are not appropriate. The first is a redated email, dated April 3, 2008, from Daniel Deiss to Jeffrey Connolly, neither attorneys, copying two other non-attorneys and Mr. Case. The privilege log entry for this email states: "Email reflecting confidential attorney-client communications with BCBSM Legal Department regarding MLR issues." (ECF No. 145-3, PageID.3573). This is insufficient to establish the privilege, as discussed above, where an attorney is merely copied on the email. What is more, review of this email indicates the statements contained in this email, except the sentence beginning "Matt Case has reviewed," do not appear to be relaying legal advice or communicated for the purpose of obtaining legal advice. Similarly, in another email in Exhibit L, Doug Darland sent an email to Daniel Deiss, copying Mr. Case and others who are not attorneys, dated April 7, 2008. The entire body of the email was redacted. (ECF No. 145-13, PageID.3648). The privilege log description is the conclusory statement noted above to be inadequate. (*See* ECF No. 145-3, PageID.3573). Despite the fact that Mr. Case was copied, the statements contained in this email do not appear to be relaying legal advice or communicated for the purpose of obtaining legal advice.

Exhibit S is problematic for two reasons: some of the redacted emails do not contain privileged communication and some of those emails do not have a corresponding entry in the privilege log. The first email in the chain, dated

October 9, 2012, is from Susan Kozik to Alison Pollard and Scott O'Neal. (ECF No. 145-20, PageID.3692). Ms. Pollard and Mr. O'Neal are not listed in the BCBSM employee list, so it is not clear if they are attorneys. (*See* ECF No. 145-18). What is more, there is no email listed in the privilege log containing either of the names of those involved in this October 9, 2012 email. If Pollard and/or O'Neal are not attorneys, then this email is not a privileged communication because Ms. Kozik is not seeking advice from an attorney nor sharing legal advice. If Pollard and/or O'Neal are attorneys, then the email is properly redacted. This analysis applies to the two responses flowing from Ms. Kozik's email—the email from Ms. Pollard dated October 9, 2012 (10:09 p.m.) and the email from Gerald Noxon dated October 10, 2012. If neither Ms. Pollard nor Mr. O'Neal are attorneys, these emails are not privileged. These emails, however, are not listed in the privilege log. Similarly, in an email from Kellie Norton dated December 5, 2012, BCBSM redacted a sentence clause which is not clearly attorney-client privileged, and there does not appear to be a corresponding privilege log entry explaining this specific redaction.

Unless BCBSM adequately explains in an updated log where and how attorney-client privilege is implicated in the emails found in Exhibits L and S, these emails must be produced without redaction. BCBSM is therefore **ORDERED** to review the emails in Exhibits L and S and provide an updated

15

privilege log adequately explaining the redactions, produce emails which are not privileged, and/or supplement its production with only appropriate redactions. This must be completed within 21 days of entry of this Order.

The remaining emails provided for in camera review contain appropriate redactions.

The Court declines Plaintiffs' request to undertake in camera review of all the emails listed in the privilege log at this time. BCBSM has been ordered to review its log and supplement it with more detail, or otherwise produce the email in whole or with appropriate redaction.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: July 16, 2021	<u>s/Curtis Ivy, Jr.</u>
	Curtis Ivy, Jr.
	United States Magistrate Judge