# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

The Grand Traverse Band of
Ottawa and Chippewa Indians, and
Its Employee Welfare Plan,                    Case No. 14-11349

                Plaintiffs,     Judith E. Levy
                    United States District Judge
v.
                    Mag. Judge Curtis Ivy, Jr.
Blue Cross and Blue Shield of
Michigan,

                Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS'
## MOTION FOR RECONSIDERATION [198]

In this long running dispute, Plaintiffs, the Grand Traverse Band of Ottawa and Chippewa Indians (the "Tribe") and its Employee Welfare Plan (the "Plan"), contend that Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), the Plan administrator, mismanaged Plan assets by failing to obtain Medicare-Like Rates ("MLR") for eligible claims by Tribe members. Plaintiffs also allege that Defendant breached the parties' Facility Claims Processing Agreement ("FCPA") to provide

Plaintiffs with discounts on claims that were "close to" MLR for services at Munson Medical Center ("Munson").

Before the Court is Plaintiffs' motion for reconsideration of the Court's August 3, 2022 Order granting Defendant's motion for partial summary judgment and denying Plaintiffs' motion for partial summary judgment. (ECF No. 198.) For the reasons set forth below, Plaintiffs' motion is denied.

## I.    Background

The Court has previously set forth the factual background underlying this case in detail. (ECF No. 99, PageID.2919–2923; ECF No. 122, PageID.3250–3252.) The relevant procedural history is summarized below.

Plaintiffs filed their initial complaint in this action on April 1, 2014. (ECF No. 1.) On January 24, 2017, Plaintiffs filed their first amended complaint, which remains the operative complaint in this action. (ECF No. 90.) The amended complaint included six counts: (i) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*; (ii) violations of Michigan's Health Care False Claims Act ("HCFCA"), Mich. Comp.

Laws § 752.1001 *et seq.*; (iii) breach of contract and the covenant of good faith and fair dealing; (iv) breach of common law fiduciary duty; (v) fraud/misrepresentation; and (vi) silent fraud. (*Id.* at PageID.2554–2560.)

On February 23, 2017, Defendant moved to dismiss the amended complaint. (ECF No. 94.) On July 21, 2017, the Court dismissed Plaintiffs' ERISA claim as barred under the statute of limitations, dismissed Plaintiffs' fraud and silent fraud claims as duplicative of the breach of contract claim, and dismissed the portion of Plaintiffs' breach of contract claim based on the implied covenant of good faith and fair dealing. (ECF No. 99.) Per the agreement of the parties, the Court also dismissed the HCFCA claim and common law breach of fiduciary duty claim as preempted under ERISA. (*Id.* at PageID.2939; *see also* ECF No. 96, PageID.2678.) Plaintiffs moved for reconsideration and for leave to file a second amended complaint. (ECF Nos. 101, 102.) The Court denied both motions. (ECF No. 107.)

After the Sixth Circuit's decision in *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.* (*Saginaw Chippewa II*), 748 F. App'x 12, 19 (6th Cir. 2018), the parties agreed to reinstate

3

Plaintiffs' claims for violations of the HCFCA and breach of common law fiduciary duty as to the non-employee Tribe members (Group #01020). (ECF No. 116.) Defendant moved to dismiss the reinstated claims (ECF No. 117.) On May 20, 2019, the Court dismissed the breach of common law fiduciary duty claim as time-barred but declined to dismiss the HCFCA claim. (ECF No. 122.) Defendant filed a motion for reconsideration of the Court's decision with respect to Plaintiffs' HCFCA claim, or in the alternative, certification to the Michigan Supreme Court or the Sixth Circuit. (ECF No. 123.) The Court denied Defendant's motion. (ECF Nos. 126, 129.) As a result, the remaining claims were Plaintiffs' breach of contract claim and Plaintiffs' HCFCA claim.

On May 5, 2021, Plaintiffs filed a motion to compel, requesting that the Court order Defendant to "produce without redactions all documents withheld under an improper assertion of attorney client privilege," or in the alternative, conduct an in camera review of certain withheld documents. (ECF No. 145, PageID.3518–3519.) The motion was referred to Magistrate Judge Curtis Ivy, Jr. (ECF No. 146.) Following briefing and oral argument, Judge Ivy issued an Order on

Plaintiffs' motion to compel on July 16, 2021. (ECF No. 169.) Plaintiffs subsequently filed a motion for reconsideration of Judge Ivy's order. (ECF No. 176.) Defendant filed a response (ECF No. 183), and Plaintiffs replied. (ECF No. 185.)

On May 21, 2021, the parties filed cross-motions for partial summary judgment on Plaintiffs' HCFCA claim. (ECF Nos. 154, 155.) The Court heard oral argument on the motions on September 20, 2021. (*See* ECF No. 189.) While those motions were still pending, the parties submitted a stipulated order dismissing Plaintiffs' breach of contract claim with prejudice. (ECF No. 194.) On August 3, 2022, the Court granted Defendant's motion for partial summary judgment and denied Plaintiffs' motion for partial summary judgment. (ECF No. 196.) Because the HCFCA claim was the only remaining claim in the case, the Court's decision constituted a final order.[1] The Court's Order did not expressly resolve Plaintiffs' motion for reconsideration of Judge Ivy's Order.

---

[1] Defendant's third-party complaint against Munson (ECF No. 45) was dismissed with prejudice per a stipulation between the parties on November 8, 2021. (ECF No. 191.) Munson's crossclaim against Plaintiffs (ECF No. 51, PageID.1499–1515) was dismissed with prejudice per a stipulation between the parties on December 7, 2021. (ECF No. 193.)

On August 16, 2022, Plaintiffs filed a motion for reconsideration of the Court's August 3, 2022 Order pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 198.) With the Court's permission, Defendant filed a response (ECF No. 201), and Plaintiffs filed a reply. (ECF No. 202.)

## II.   Legal Standard

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The Sixth Circuit has held that "judgment," as used in Rule 59(e), refers to both judgments and final orders. *Keith v. Bobby*, 618 F.3d 594, 597–98 (6th Cir. 2010) (citations omitted). Here, the Court's August 3, 2022 Order resolved the only remaining claim in this case and is therefore a final order subject to Rule 59(e).

"[A] district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012) (citing *Leisure Caviar, LLC v. U. S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). "A Rule 59 motion 'may not be used to relitigate old

matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)). The district court has "considerable discretion" in deciding whether to grant a motion under Rule 59(e). *Leisure Caviar*, 616 F.3d at 615.

## III.   Analysis

### A.   The Court Did Not Err in Limiting Plaintiffs to the HCFCA Claim Asserted in Their Complaint

In resolving the parties' motions for partial summary judgment, the Court first addressed the dispute over the basis of Plaintiffs' HCFCA claim. (ECF No. 196, PageID.5871–5882.) As the Court explained, "[t]he parties disagree on the nature of this claim: specifically, why the amount charged by Defendant BCBSM for paying the claims was 'false' under [the HCFCA]." (*Id.* at PageID.5871.) Quoting the amended complaint, Defendant asserted that the HCFCA claim was premised solely on Plaintiffs' assertion that "[t]he amount charged by BCBSM for paying the claims was false because Plaintiffs were not required to pay more than Medicare-Like Rates on a number of claims administered by BCBSM." (ECF No. 167, PageID.5358

7

(emphasis omitted); *see also* ECF No. 154, PageID.3793.) By contrast, Plaintiffs framed the nature of the claim as: "Because of Blue Cross's false representations, '[t]he amount[s] charged by BCBSM for paying the claims was false[.]' Further, 'Plaintiffs were not required to pay more than Medicare-Like Rates on a number of claims administered by BCBSM.'" (ECF No. 164, PageID.4996 (alterations in original) (citations omitted).) Based on this framing, Plaintiffs' response identified three separate HCFCA violations by Defendant:

> (1) misrepresenting the nature of its network rates to the [Plaintiff] as being "better than MLR," and, when that representation became untenable, misrepresenting its network rates as being 8% off MLR; (2) through those same misrepresentations, impliedly certifying compliance with the MLR regulations and the FCPA, while knowingly and repeatedly violating their requirements; and (3) fraudulently inducing the Band to renew its [Administrative Services Contract ("ASC")] and enter into the FCPA through misrepresentations of its network rates vis-à-vis MLR.[2]

---

[2] In their own motion for partial summary judgment, Plaintiffs identified only two theories of liability under the HCFCA. (*See* ECF No. 155, PageID.3997–4003.) First, they argued that Defendant's claims for payment were false under an implied certification theory because Defendant "knowingly concealed and affirmatively misrepresented the true nature of its network rates vis-à-vis MLR prices, presenting the Band with claims at inflated network prices and violating the MLR regulations." (*Id.* at PageID.3999.) Second, they asserted the claims were false under a fraudulent inducement theory, explaining that they "would not have agreed to renew the ASCs, enter into the FCPA, and continue under those agreements

(*Id.* at PageID.4997.) Defendant argued that Plaintiffs' descriptions of their HCFCA claim at summary judgment were not consistent with the claim as plead in the amended complaint. (*See* ECF No. 165, PageID.5233–5235; ECF No. 167, PageID.5359–5360.) After analyzing the issue, the Court agreed with Defendant, holding that it would "not permit Plaintiffs to advance this new theory of liability on summary judgment and will evaluate Plaintiffs' HCFCA claim as articulated in the complaint."[3] (ECF No. 196, PageID.5882.)

---

absent [Defendant's] representations about the nature of its discounts in comparison with MLR." (*Id.* at PageID.40001.)

In their reply brief. Plaintiffs again asserted only two theories of their HCFCA claim, stating: "[Defendant's] lies about compliance with regulations, material to administration of the Band's claims, violated the HCFCA. [Defendant] also lied about the nature of its network rates vis-à-vis MLR, duping the Band into renewing its yearly ASC and inducing the Band to enter the FCPA. That also violated the HCFCA." (ECF No. 168, PageID.5384 (citations omitted).)

[3] The Court's analysis in its August 3, 2022 Order focused on Plaintiffs' overarching argument that the claims were false because of Defendant's alleged misrepresentations. (*See* ECF No. 196, PageID.5881 ("Plaintiffs' newly articulated version [of their HCFCA claim] requires answering whether Defendant BCBSM made misrepresentations as to whether Plaintiffs were receiving the better of MLR or the contractual rates, in light of Plaintiffs' entitlement to MLR[.]").) As such, the Court did not separately address each of Plaintiffs' more specific theories of liability under the HCFCA.

In their motion for reconsideration, Plaintiffs assert that the Court erred in so-limiting Plaintiffs' HCFCA claim.[4] They contend that (i) the Court misconstrued their HCFCA claim, (ii) they were permitted to clarify or refine their legal theories in their motion for summary judgment, and (iii) Defendant was not unfairly prejudiced. (*See* ECF No. 198, PageID.5922–5936.) As set forth below, none of Plaintiffs' arguments are availing.

> i.   *The Court Did Not Misconstrue Plaintiffs' HCFCA Claim*

In their motion, Plaintiffs first contend that the Court erred in construing Plaintiffs' HCFCA claim as one based solely on Defendant's failure to pay claims at MLR. More specifically, Plaintiffs argue that the

---

[4] While there was some variation in Plaintiffs' summary judgment briefing, the motion clarifies Plaintiffs' understanding of their HCFCA claim, explaining that:

> Plaintiffs' HCFCA claim is . . . factually predicated on the [amended complaint's] well-pleaded factual allegations that (1) [Defendant] misrepresented to [Plaintiff] that [Defendant's] contractual discounts were better than or at least close to the discounts Plaintiffs were entitled to under the MLR regulations; and (2) [Defendant] fraudulently induced Plaintiffs into entering the [FCPA] that promised a contractual discount that would purportedly yield a payment rate "close to" MLR.

(*Id.* at PageID.5917; *see also id.* at PageID.5922–5924, 5930.) The Court will limit its analysis of Plaintiffs' arguments to these two theories of liability under the HCFCA.

Court (1) ignored relevant factual allegations that were incorporated into their HCFCA claim by reference, (2) misapplied the heightened pleading standard under Federal Rule of Civil Procedure 9(b), and (3) denied Plaintiffs the opportunity to expand the relevant factual allegations by rejecting Plaintiffs' proposed second amended complaint. (*See id.* at PageID.5922–5930.) The Court addresses each of these arguments in turn.

Initially, Plaintiffs assert that the Court's decision ignored factual allegations that support their additional HCFCA theories. They point to numerous paragraphs in the amended complaint related to the FCPA, which they argue demonstrate "[Defendant's] misrepresentations of its rates vis-à-vis MLR and its fraudulent inducement of Plaintiffs to enter the FCPA." (*See id.* at PageID.5922–5924.) Plaintiffs also emphasize that these allegations were incorporated by reference into their HCFCA claim. (*See id.* at PageID.5924–5926.) As a result, Plaintiffs insist that the Court erred in holding that the FCPA allegations were "only 'used to support Plaintiffs' breach of contract, fraud, and silent fraud claims.'" (*Id.* at PageID.5926 (quoting ECF No. 196, PageID.5876).) And they further contend that "nothing in Plaintiffs' [amended complaint]

supports that restrictive interpretation of Plaintiffs' HCFCA claim." (*Id.*) However, Plaintiffs' arguments overlook relevant context within the amended complaint that supports the Court's decision.

In the amended complaint, Plaintiffs took pains to distinguish between Defendant's failure to obtain MLR for all Tribe members and Defendant's failure to provide discounts "close to" MLR under the FCPA. After explaining how Defendant allegedly breached its fiduciary duties by failing to take advantage of MLR, the amended complaint asserted:

> 12. In addition, BCBSM also breached a separate contractual agreement with Plaintiffs.
>
> 13. Effective March 1, 2009, Plaintiffs, BCBSM, and Munson entered into a contractual agreement entitled "Facility Claims Processing Agreement" ("FCPA").
>
> 14. Under the FCPA, BCBSM agreed to provide Plaintiffs a discount (the "FCPA Discount") on hospital services provided by Munson to Plan participants in Group #01020 (*i.e.*, Plan participants who were members of the Tribe but not employed by the Tribe).
>
> 15. BCBSM breached the FCPA by failing to provide the FCPA Discount to Plaintiffs.
>
> 16. Plaintiffs' claims for breach of fiduciary duty under ERISA are separate and distinct from Plaintiffs' claim for breach of the FCPA for a number of reasons:

(a)   The FCPA Discount only applied to services provided by Munson, whereas Medicare-Like Rate discounts were available for services provided by all Medicare-participating hospitals;

(b)   The FCPA Discount only applied to services provided to Tribal members who were not employed by the Tribe (i.e., Group #01020 participants), whereas Medicare-Like Rate discounts were available for services provided to any member of the Tribe, regardless of whether they were employed by the Tribe (*i.e.*, Group #01019 and #01020 participants);

(c)   The FCPA Discount only applied to services provided after March 1, 2009, whereas Medicare-Like Rate discounts were available for services dating back to July of 2007;

(d)   The FCPA Discount was much smaller than the Medicare-Like Rate discounts to which Plaintiffs were entitled; and

(e)   The legal basis for the breach of fiduciary duty claims under ERISA are different than the legal basis for the breach of contract claim related to the FCPA.

(ECF No. 90, PageID.25543–2544.)

Consistent with these distinctions, Plaintiffs then alleged in their HCFCA claim:

> 73. Plaintiffs reimbursed BCBSM for health care services it paid on behalf of [the Tribe's] employees, citizens, and dependents.
>
> 74. The amount charged by BCBSM for paying the claims was false because Plaintiffs were not required to pay more than Medicare-Like Rates on a number of claims administered by BCBSM.

(*Id.* at PageID.2556.) Notably, Plaintiffs' HCFCA claim makes no mention of the FCPA or the FCPA Discount. (*Id.*) Nor is there any indication that the HCFCA claim is limited—consistent with the FCPA—to services for Group #01020 (non-employees) at Munson after March 1, 2009. (*Id.*) Instead, Plaintiffs' HCFCA claim concerns all Tribe members ("employees, citizens, and dependents") and is based on Plaintiffs' entitlement to "Medicare-Like Rates on a number of claims." (*Id.*) Therefore, the amended complaint, taken as a whole, makes clear that the HCFCA claim is premised on Defendant charging more than MLR, not the FCPA.

While Plaintiffs are correct that their HCFCA claim incorporated all preceding paragraphs, it also included the amended complaint's delineation between MLR and the FCPA that Plaintiffs articulated in ¶ 16. Plaintiffs cannot ignore these distinctions now because they are

inconvenient. Thus, the factual allegations regarding the FCPA on which Plaintiffs rely (*see* ECF No. 198, PageID.5922–5924) have no bearing on their HCFCA claim based on MLR. As such, Plaintiffs' attempts to expand their claim at summary judgment to include misrepresentations and fraudulent inducement related to the FCPA are inconsistent with the amended complaint.

Next, Plaintiffs challenge the Court's reliance on Rule 9(b)'s heightened pleading standard in rejecting their new HCFCA theories.[5] They assert that, because the amended complaint "alleges the factual particulars of the precise misrepresentations at issue," Rule 9(b) was satisfied. (ECF No. 198, PageID.5928.) Additionally, Plaintiffs contend that "the Sixth Circuit has 'rejected a strict reading of Rule 9(b)'" and that Rule 9(b)'s requirements are less stringent when a claim concerns a "complex case spanning a significant time and there was no

---

[5] Plaintiffs do not dispute that "a heightened pleading standard unquestionably applies to Plaintiffs' HCFCA claim." (ECF No. 196, PageID.5872 & n.2.) Additionally, Michigan courts have held that federal case law regarding the federal False Claims Act ("FCA") is persuasive as to the appropriate pleading standard for HCFCA claims. *See State ex rel. Gurganus v. CVS Caremark Corp.*, No. 299997, 2013 WL 238552, at *10–11 (Mich. Ct. App. Jan. 22, 2013), *rev'd on other grounds*, 496 Mich. 45 (2014).

opportunity for discovery before the [amended complaint] was filed."

(*Id.*) The Court does not agree.

> As the Court previously summarized:
>
> "Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.* [(*Prather I*)], 838 F.3d 750, 771 (6th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b)'s particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* (internal citation and quotation marks omitted). "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (internal citation and quotation marks omitted).

(ECF No. 196, PageID.5873.) Additionally, the Sixth Circuit has emphasized that "[i]f the complaint alleges a complex and far-reaching fraudulent scheme, then that scheme must be pleaded with particularity and the complaint must also provide[ ] examples of specific fraudulent conduct that are representative samples of the scheme." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*

(*Prather II*), 892 F.3d 822, 830 (6th Cir. 2018) (second alteration in original) (citations and internal quotation marks omitted).

These heightened pleading requirements further underscore Plaintiffs' failure to allege an HCFCA claim premised on violations of the FCPA. As the Court explained in its prior Order, "[t]o ignore the implications of Rule 9(b)'s requirements for fraud-based claims at the summary judgment stage would effectively bypass its purpose as a means of affording a defendant a more specific form of notice of the precise misconduct at issue as compared to non-fraud-based claims." (ECF No. 198, PageID.5880.) In their reconsideration motion, Plaintiffs fail to explain how the amended complaint alleges an HCFCA claim based on the FCPA with particularity, pointing only to the same misrepresentations the Court already distinguished above. As such, Plaintiffs have failed to demonstrate that the Court erred in applying Rule 9(b) to limit Plaintiffs to the HCFCA claim actually alleged in their complaint.

Finally, Plaintiffs point to their proposed second amendment complaint, asserting that it "would have added [additional] factual allegation regarding [Defendant's] misrepresentations." (*See* ECF No.

198, PageID.5928–5929.) They complain that "[t]he Court denied Plaintiffs' motion, opining it was 'futile.' Now, after discovery, this Court has granted BCBSM's summary judgment motion in part because it apparently believed these factual allegations were necessary." (*Id.* at PageID.5929–5930 (citations omitted).)

As an initial matter, Plaintiffs failed to raise this argument in their summary judgment briefing and therefore may not do so now. *See Brumley*, 909 F.3d at 841. Moreover, Plaintiffs' argument is disingenuous. In their August 4, 2017 motion to file a second amended complaint, Plaintiffs made no mention of their HCFCA claim whatsoever. (*See* ECF No. 102.) As discussed further below, *see infra* pp. 27–28, this is likely because the parties agreed at the time that Plaintiffs' HCFCA claim was preempted under ERISA. (*See* ECF No. No. 94, PageID.2624–2626; ECF No. 96, PageID.2678–2679.) Plaintiffs' motion instead sought "to present the additional facts relevant to the statute of limitations analysis" and offer a "more explicit and clear . . . description of Plaintiffs' ***ERISA claims***." (ECF No. 102, PageID.2971–2972 (emphasis added); *see also id.* at PageID.2972–2975 (discussing the "two types of changes" in the proposed second amended complaint).)

18

In denying the motion, the Court explained: "The amended complaint would be futile, because the amended **ERISA breach of fiduciary claim** could not withstand a motion to dismiss." (ECF No. 107, PageID.3141 (emphasis added).) Plaintiffs' assertion—more than five years later—that their proposed second amended complaint was intended to clarify their then-dismissed HCFCA claim is without merit.

Accordingly, the Court did not err in finding that Plaintiffs' HCFCA claim was limited to Defendant's failure to obtain MLR as alleged in the amended complaint.

### ii. Plaintiffs Were Not Entitled to Revise Their HCFCA Claim at Summary Judgment

Plaintiffs next assert that, to the extent their "summary judgment briefing clarified, refined, or developed the theories underlying Plaintiffs' HCFCA claim based on the record that emerged during discovery, that was entirely permissible." (ECF No. 198, PageID.5930.) The Court does not agree.

The Sixth Circuit has repeatedly held that plaintiffs may not expand their claims at summary judgment. *See, e.g.*, *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019); *Alexander v. Carter*, 733 F. App'x 256, 265 (6th Cir. 2018); *Bridgeport Music, Inc. v.*

*WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). This is because "allowing a plaintiff to raise new theories in response to a motion for summary judgment would 'den[y] a defendant sufficient notice of what claims to investigate.'" *Rafferty v. Trumbull Cnty.*, 758 F. App'x 425, 429 (6th Cir. 2018) (alteration in original) (citing *West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016)). "Such a restriction is even more relevant at the summary judgment stage of proceedings, after a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories." *West*, 672 F. App'x at 541 (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 665 (6th Cir. 2012)). Moreover, "if the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally 'subjects a defendant to "unfair surprise," because the defendant has no opportunity to investigate the claim during discovery.'" *Davis*, 945 F.3d at 496 (quoting *M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778 (6th Cir. 2017)). "And the court's ability to decide the case is similarly undermined, as the 'gravamen of the dispute' had not been 'brought frankly into the open for inspection by the court.'" *M.D.*, 709 F. App'x at 778 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–

13 (2002)). Therefore, "[p]arties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis*, 945 F.3d at 496 (citations omitted).

In their motion, Plaintiffs point to several Sixth Circuit cases in support of their attempts to refine their claims at summary judgment.[6] (*See* ECF No. 198, PageID.5930–5933.) As an initial matter, none of these cases involve claims based on fraud subject to Rule 9(b). Moreover, the cases cited by Plaintiffs either support the Court's decision or are readily distinguishable.

For example, in *Boshaw v. Midland Brewing Co.*, the Sixth Circuit explained that "as a general rule, a plaintiff's complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." 32 F.4th 598, 606 (6th Cir. 2022)

---

[6] Plaintiffs also cite to several cases from the Seventh Circuit that suggest a plaintiff is entitled to alter or refine their legal theory at summary judgment. (*See* ECF No. 198, PageID.5930–5933 (citing *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 743–44 (7th Cir. 2015); *Chessie Logistics Co. v. Krinos Holdings*, Inc., 867 F.3d 852, 859 (7th Cir. 2017).) However, Plaintiffs fail to explain how these cases are compatible with the binding Sixth Circuit precedent discussed above.

(citations omitted). However, after stating this general rule, the *Boshaw* court continued:

> But in the employment setting, while "[d]iscrete-discriminatory-act and hostile-work-environment claims are both species of discrimination claims," they are nonetheless "different in kind." In particular, a hostile work environment claim requires a plaintiff to demonstrate a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Yet all Boshaw alleged were "isolated incidents," which are not enough, standing alone, to state a hostile work environment claim.

*Id.* at 607 (alterations in original) (citations omitted). The *Boshaw* court therefore affirmed the district court's refusal to consider the plaintiff's hostile work environment theory. *Id.* at 606–07. Consistent with *Boshaw*, the Sixth Circuit has repeatedly rejected plaintiffs' attempts to expand their theories of recovery at summary judgment. *See, e.g.*, *Vonderhaar v. Waymire*, 797 F. App'x 981, 990–91 (6th Cir. 2020) (limiting the plaintiff's Family Medical Leave Act claim to the "involuntary leave" theory raised in her complaint).

The same principle applies to Plaintiffs' HCFCA claim. That Plaintiffs could have theoretically asserted HCFCA claims based on Defendant's purported misrepresentations or fraudulent inducement of

the FCPA does not mean such claims are alleged in amended complaint. *See Alexander*, 733 F. App'x at 264–65 ("A defendant's knowledge that the . . . theory of liability exists does not prove his awareness that a plaintiff may seek or obtain recovery based on that theory.") As in *Boshaw*, those additional theories would be different "species" of HCFCA claims "different in kind" to the HCFCA claim based on MLR asserted in the amended complaint. *See* 32 F.4th at 607. Therefore, *Boshaw* does not support Plaintiffs attempts to expand their HCFCA claim at summary judgment.

Plaintiffs also rely on a pair of civil rights cases in which the Sixth Circuit found that the plaintiff's new arguments did not expand their claims at summary judgment. In *Bard v. Brown County*, the plaintiff asserted a claim under 42 U.S.C. § 1983, which indicated that the decedent "died as a result of homicidal strangulation." 970 F.3d 738, 749–50 (6th Cir. 2020). However, at summary judgment, the plaintiff argued that the decedent died because of "self-strangulation." In concluding that the plaintiff did not seek to expand her claim in opposition to summary judgment, the *Bard* court emphasized that either theory "focused on the officers' actions inside cell 15 that led to

23

[the decedent's] death" and therefore "did not 'subject defendants to unfair surprise.'" *Id.* at 750 (citation omitted). Likewise, in *Grinnell v. City of Taylor*, the plaintiff alleged that the defendant officers "were obligated to stop [the officers] from the brutal, unjustified physical attack inflicted on [p]laintiff" and that "none of the other officers at the scene came to the rescue of [p]laintiff, nor did they attempt to restrain the assaulting officers." No. 21-2748, 2022 WL 1562291, at *5 (6th Cir. May 18, 2022) (first alteration in original) (citations omitted). Relying on *Bard*, the Sixth Circuit concluded: "Although Grinnell did not use the phrase 'failure to intervene,' he alleged conduct that, for all intents and purposes, put [d]efendants on notice that he intended to bring a failure to intervene claim." *Id.* (citation omitted).

Plaintiffs contend that, like in *Bard*, "to the extent there was a shift in legal theories . . . , the fundamental factual allegations of [Defendant's] misrepresentation regarding the nature of its rates vis-à-vis MLR and its fraudulent inducement of Plaintiffs to enter into the FCPA remained the same." (ECF No. 198, PageID.5933.) However, *Bard* and *Grinnell* are inapplicable here because Plaintiffs' new HCFCA theories are not premised on the same conduct as the HCFCA claim

24

alleged in the amended complaint. As the Court discussed above, the amended complaint expressly differentiates between Defendant's failure to obtain MLR for all Tribe members and Defendant's conduct related to the FCPA. *See supra* pp.12–15. And because the HCFCA claim only references Defendant's failure to pay claims at MLR, Defendant was not put on notice that Plaintiffs were also asserting an HCFCA claim premised on Defendant's purported misrepresentations related to the FCPA. *See id.* Therefore, this case is not comparable to *Bard* or *Grinnell*.

In addition to these Sixth Circuit cases, Plaintiffs rely on *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), asserting that "[Defendant's] position, which this Court adopted, is erroneously based on the 'theory of the pleadings' doctrine, which has long ago been abolished." (ECF 198, PageID.5932 n.2; *see also id.* at PageID.5922, 5933.) However, the Sixth Circuit has explained:

> It is true that the Supreme Court instructs us to disregard the old doctrine of the "theory of the pleadings," on the ground that the Federal Rules of Civil Procedure have rendered it obsolete, focusing instead on the sufficiency of a plaintiff's factual pleading. *See, e.g., Johnson v. City of Shelby*, ___ U.S. ____, 135 S.Ct. 346, 347, 190 L.Ed.2d 309 (2014). However, *Johnson* concerned the sufficiency of

25

pleadings at the motion to dismiss stage, not a motion for summary judgment. As this Court has held repeatedly, a plaintiff "seek[ing] to expand [her] claims to assert new theories[ ] . . . may not do so in response to summary judgment or on appeal." *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citations omitted); *see also Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784,788 (6th Cir. 2005) (holding "liberal pleading standards" governing motion to dismiss inapplicable at summary judgment); *Patterson v. Outback Steakhouse of Fla. LLC*, No. 17-5035, 2017 U.S. App. LEXIS 21413, at *6 (6th Cir. Oct. 25, 2017) (unpublished) (observing that allowing a party "to raise . . . new legal claim[s] at the summary judgment stage would . . . subject[ ] [the contrary party] to unfair surprise" (citation omitted) ).

*Alexander*, 733 F. App'x at 264–65 (alterations in original); *see also Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 445 (6th Cir. 2021) ("*Johnson* involved pleadings at the motion to dismiss stage. And this Circuit has refused to apply *Johnson* to summary judgment cases." (citations omitted)). Thus, Plaintiffs' reliance on *Johnson* is unavailing.

Accordingly, the Court did not err in holding that Plaintiffs may not expand their HCFCA claim at summary judgment to include misrepresentation and fraudulent inducement theories based on the FCPA.

> ### iii. *Defendant was Prejudiced by Plaintiffs' New HCFCA Theories*

Plaintiffs also contend that the Court erred in finding Defendant was prejudiced by any change to their HCFCA claim. In support, they point to numerous excerpts from the June 7, 2017 hearing on Defendant's motion to dismiss the amended complaint.[7] (*See* ECF No. 198, PageID.5933–5936.) Based on these excerpts, Plaintiffs assert that both the Court and Defendant repeatedly acknowledged that Plaintiffs' HCFCA claim was premised on Defendant's alleged misrepresentations about providing rates "close to" MLR. (*Id.*)

However, as Defendant correctly points out, "neither the parties nor the Court ever discussed the HCFCA claim during the June 2017 argument" and each of Plaintiffs' excerpts "address[ ] claims other than the HCFCA claim." (ECF No. 201, PageID.5965–5966 (emphasis omitted); *see also* ECF No. 98, PageID.2855–2857, 2862, 2872–2874.) While Plaintiffs are correct that Defendant sought dismissal of the entire amended complaint (*see* ECF No. 202, PageID.5980), Defendant's sole argument on the HCFCA claim was that it was preempted by

---

[7] In their motion, Plaintiffs identify the date of this hearing as July 17, 2017. (ECF No. 198, PageID.5934.) However, that is the date the transcript for the hearing was filed. (*See* ECF No. 98.)

ERISA. (ECF No. 94, PageID.2624–2626.) And Plaintiffs' March 16, 2017 response to Defendant's motion **expressly agreed** with Defendant that the HCFCA was preempted by ERISA and should be dismissed. (ECF No. 96, PageID.2678–2679.) Given this agreement between the parties, there was no discussion of the HCFCA claim at the June 7, 2017 hearing (*see* ECF No. 98, PageID.2873) and the claim was summarily dismissed. (ECF No. 99, PageID.2939.) As such, the arguments made at the hearing regarding Plaintiffs' other claims could not have provided Defendant notice that Plaintiffs' HCFCA claim was actually based on Defendant's alleged misrepresentations.[8]

---

[8] In a footnote, Plaintiffs also point to the Court's previous statement in its July 21, 2021 Opinion and Order on Defendant's motion to dismiss the amended complaint that

> [b]ecause plaintiffs were allegedly not receiving the promised discount that would make their payments "close to MLR," they filed suit alleging five state-law claims: breach of Health Care False Claims Act; breach of contract, and alternatively, covenant of good faith and fair dealing; breach of common law fiduciary duty; fraud/misrepresentation; and silent fraud.

(*See* ECF No. 99, PageID.2923; ECF No. 198, PageID.5936 n.4.) However, the Court's broad generalization regarding the gravamen of Plaintiffs' amended complaint—at a time when all parties agreed that the HCFCA claim was preempted by ERISA—does not obviate Plaintiffs' failure to clearly articulate a HCFCA claim based on these additional FCPA theories.

28

Accordingly, the Court did not err in concluding that Defendant was prejudiced by Plaintiffs' new HCFCA theories.

## B.   The Court Did Not Err in Finding that the MLR Regulations Do Not Apply to Defendant

After addressing the scope of Plaintiffs' HCFCA claim, the Court turned to whether Plaintiffs could prevail on their claim as alleged in the amended complaint. Defendant argued that it could not be held liable under the HCFCA based on violations of the MLR regulations, codified at 42 C.F.R. §§ 136.30–136.32, because the regulations did not apply to Defendant directly. (*See* ECF No. 154, PageID.3793–3797.) Plaintiffs disagreed, asserting that the regulations "plainly . . . govern [Defendant's] payment of healthcare claims using tribal funds." (*See* ECF No. 164, PageID.5000–5001.) The Court carefully analyzed the relevant text of the regulations and considered the parties competing arguments before finding that the MLR regulations did not govern third-party administrators ("TPA") like Defendant. (*See* ECF No. 196, PageID.5882–5896.) The Court then concluded that "[b]ecause Plaintiffs have failed to demonstrate that Defendant[ ] can violate 42 C.F.R. § 136.30, this necessarily means that they have failed to allege derivative violations of the HCFCA." (*Id.* at PageID.5896.)

29

In their motion for reconsideration, Plaintiffs contend that the Court erred in finding that Defendant was not subject to the MLR regulations. Additionally, Plaintiffs assert that Defendant's arguments regarding the application of the MLR regulations was an "affirmative defense" and that Defendant waived that defense by not raising it earlier in the litigation. Neither argument is persuasive.

### i.    *The MLR Regulations Do Not Apply to Defendant*

Plaintiffs argue that the Court erred in concluding that the MLR regulations do not apply to Defendant. The Court does not agree.

First, Plaintiffs assert that the Court "ignore[d] the relevant question" when it "reasoned that 'TPAs are never referenced in the entirety of § 136.30.'" (ECF No. 198, PageID.5941 (quoting ECF No. 196, PageID.5893).) They explain that "[t]he question is not whether the MLR regulations *identify* TPAs or [Defendant] specifically, but whether the regulations apply to [Defendant's] *conduct* at issue—payment of claims for [Contract Health Services ("CHS")] care using tribal plan assets." (*Id.* (emphasis in original).) These arguments mischaracterize the Court's analysis on this issue and repeat arguments the Court has already rejected. As the Court explained: "By the plain language of

§ 136.30, the MLR regulations set forth the governing framework by which Medicare-participating hospitals will pay for MLR-eligible care— without extending such obligations on other entities involved in the healthcare provision or claims process." (ECF No. 196, PageID.5894.) And as the Court summarized:

> Ultimately, the underpinning logic of Plaintiffs' argument is that because Defendant[ ] is involved in the payment to Medicare-participating hospitals for CHS, and that is the underlying conduct in this case, Defendant[ ] must be beholden to the MLR regulations. But Plaintiffs' argument would require the Court to improperly impose an obligation on Defendant[ ] that is not included in the text of § 136.30, and Plaintiffs have not pointed to another subsection of the MLR regulations or other regulatory regimes that would otherwise create a legal requirement for Defendant[ ]to only accept MLR for claims it administered to Plaintiffs.

(*Id.* at PageID.5895–5896.) Plaintiffs fail to demonstrate how the Court erred in analyzing the MLR regulations. Nor do Plaintiffs point to a textual basis for their proposed interpretation. As such, this argument is unavailing.

Next, Plaintiffs contend that the Sixth Circuit's decision in *Saginaw Chippewa II* confirmed that "the MLR regulations clearly govern payment of claims for CHS care using tribal plans assets" and "answer[ed] affirmatively the question of whether 'Medicare-like rates

31

were . . . available for services authorized by the Tribe's CHS program and billed through the Blue Cross plans.'" (ECF No. 198, PageID.5941–5942 (second alteration in original) (quoting *Saginaw Chippewa II*, 32 F.4th at 557).) But Plaintiffs' reliance on this decision is misplaced. In *Saginaw Chippewa II*, the Sixth Circuit considered only the narrow question of "what it means for a Tribe to be 'carrying out a CHS program of the [Indian Health Service ("IHS")]'" under the MLR regulations. 32 F.4th at 558. The court concluded that "'carrying out,' . . . means that the Tribe or Tribal organization must be authorizing the care in furtherance of its [CHS] program." *Id.* at 561. The Sixth Circuit did not address whether TPAs like Defendant are subject to the MLR regulations. Instead, the court stated:

> The district court did not fully consider whether Blue Cross is or could be liable under the HCFCA because it concluded that Blue Cross had no obligation to seek MLR under the Member and Employee Plans. Blue Cross and the Tribe dispute whether Blue Cross "presented" false claims as required under the Act or whether the claims were even false. Again, the district court did not address this issue, and a remand is necessary for the district court to consider it in the first instance.

*Id.* at 564. Therefore, *Saginaw Chippewa II* does not undermine the Court's analysis of the MLR regulations.[9]

Finally, Plaintiffs claim that "the Court held in a prior opinion that BCBSM is bound by the MLR regulations" and that "[t]he Court's decision reversing course contradicts law of the case that [Defendant's] conduct is governed by the MLR regulations." (ECF No. 198, PageID.5942.) But the portion of the Court's July 21, 2017 Opinion and Order on which Plaintiffs rely relates to whether Plaintiffs' ERISA breach of fiduciary claim would create a novel cause of action not authorized by the text of ERISA. (*See* ECF No. 99, PageID.2932–2933.) That Defendant may have had a fiduciary obligation to take the MLR regulations into account in its management of the Plan does not mean the regulations apply to Defendant. Likewise, the Court's previous statement that "the issue of whether defendant should have sought a discounted rate in connection with the MLR regulations appears to be a question of fact, not of law" concerned the scope of Defendant's fiduciary

---

[9] Moreover, the Court' summary-judgment decision expressly relied on the *Saginaw Chippewa II*'s framework for regulatory interpretation in analyzing whether Defendant was subject to the MLR regulations. (*See* ECF No. 196, PageID.5889–5890.) And the Court noted in a footnote that its interpretation was consistent with *Saginaw Chippewa II*'s discussion of § 136.30 imposing obligations on "Medicare-participating hospitals." (*Id.* at PageID.5890 n.7.)

obligations under ERISA—not the appropriate interpretation of the MLR regulation. (*See id.* at PageID.2926–2927.) As such, the Court's summary-judgment decision is not inconsistent with its earlier rulings in this case.

Accordingly, Plaintiffs have not demonstrated the Court erred in concluding that the MLR regulations do not apply to Defendant.

>            *ii.    The Applicability of the MLR Regulations is Not an Affirmative Defense*

Plaintiffs contend that "[t]he Court further erred by adopting [Defendant's] affirmative defense that the MLR regulations do not apply to it." (ECF No. 198, PageID.5936.) As Defendant correctly points out (ECF No. 201, PageID.5970), Plaintiffs failed to raise this argument in their summary judgment briefing and therefore may not do so now. *See Brumley*, 909 F.3d at 841. Further, whether Defendant is subject to the MLR regulations is an element of Plaintiffs' HCFCA claim as pled in the amended complaint, not an affirmative defense. (*See* ECF No. 196, PageID.5883–5884, 5896 (discussing HCFCA liability premised on a statutory or regulatory violation under *Gurganus*).) *See also InterMed Res. TN, LLC v. Green Earth Techs., LLC*, No. 3:20-CV-01112, 2022 WL 4486402, at *4 (M.D. Tenn. Sept. 27, 2022) ("If a defense

34

merely negates a necessary element of a claim, there is no need to plead it separately pursuant to Rule 8."); *Roberge v. Hannah Marine Corp.*, 124 F.3d 199 (Table), 1997 WL 468330, at *3 (6th Cir. 1997) ("An affirmative defense, under the meaning of Fed. R. Civ. P. 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven.").

Accordingly, the Court did not err in considering Defendant's arguments regarding the applicability of the MLR regulations to Defendant at summary judgment.

### C.  Plaintiffs' Motion for Reconsideration of Magistrate Judge Ivy's Order is Moot

Finally, Plaintiffs assert that the Court further erred in not resolving their pending motion for reconsideration of Judge Ivy's Order on their motion to compel.[10] (*See* ECF No. 198, PageID.5943–5944.)

---

[10] The Court notes that Plaintiffs' motion is procedurally improper. As indicated in Judge Ivy's Order and this Court's July 29, 2021 Order granting Plaintiffs' request for an extension, the appropriate mechanism for challenging a magistrate judge's non-final order is to file objections pursuant to Federal Rule of Civil 72(a) and Eastern District of Michigan Local Rule 72.1(d)—not a motion for reconsideration. (*See* ECF No. 169, PageID.5432; ECF No. 172, PageID.5451.) While Plaintiffs cite to Rule 72 and Local Rule 72.1 (*see* ECF No. 176, PageID.5470, 5489),

However, the Court's summary-judgment decision was not dependent on the factual disputes at issue in Plaintiffs' motion to compel. (*See* ECF No. 196, PageID.5889 ("Because HCFCA liability depends on whether Defendant[ ] violated the MLR regulations, what matters here is what the regulations require—not how Defendant[ ] interpreted them at the time.").) As such, Plaintiffs' motion for reconsideration of Judge Ivy's Order is moot. *See Booth v. Flint Police Officers Ass'n*, No. 21-2960, 2022 WL 2046515, at *8 (6th Cir. June 7, 2022) (affirming the district court's denial of the plaintiff's motion to compel as moot); *Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 613 (6th Cir. 2012) (affirming that the plaintiff's discovery motion was "rendered moot by the district court's grant of summary judgment in favor of [the defendant]"). The Court's failure to state so in its August 3, 2022 Order does not undermine its decision on the parties' summary judgment motions.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Plaintiffs' motion for reconsideration of the Court's August 3, 2022 Order. (ECF No. 198.)

---

their motion for reconsideration fails to properly articulate objections consistent with those rules.

Additionally, Plaintiffs' motion for reconsideration of Judge Ivy's Order on Plaintiffs' motion to compel is DENIED as MOOT. (ECF No. 176.)

IT IS SO ORDERED.

Dated: March 29, 2024    s/Judith E. Levy
Ann Arbor, Michigan    JUDITH E. LEVY
          United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2024.

       s/William Barkholz
       WILLIAM BARKHOLZ
       Case Manager